The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing, as
 STIPULATIONS
1. At the time of the contraction of an occupational disease, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Crystal Ford Mercury, Inc. was a self-insured employer.
4. Effective September 12, 1994, plaintiff sustained a compensable occupational disease.
In addition, the parties stipulated into evidence a packet of medical records and reports. At the initial hearing, defendant was directed to provide information regarding the existence of a Form 21 agreement since liability had been admitted for the case and compensation paid. By letter dated April 25, 1997, Mr. Ratledge informed the undersigned that his client had tendered a Form 21 to the plaintiff on several occasions but that the agreement had never been returned. Plaintiff did not deny that statement.
 ***********
Based upon all of the competent, credible, and convincing evidence in the record, the undersigned make the following
 FINDINGS OF FACT
1. In 1994 plaintiff was employed by defendant in its auto body shop. He performed prep work which involved sanding, cleaning the cars, buffing them and doing some dismantling work. Apparently, the duties involved repetitive hand motions and by September 19, 1994, he had developed pain and swelling in his right hand. He went to Dr. Jeon that day for treatment, and Dr. Jeon was of the impression that he had tenosynovitis. Plaintiff was treated with rest and medication, but his symptoms persisted; so Dr. Jeon referred him to Dr. McCarthy, an orthopedic surgeon. Dr. McCarthy examined the plaintiff on October 11, 1994, injected his wrist, and prescribed medication and a splint for him. When plaintiff returned to the doctor on November 16, he reported having obtained temporary relief from the injection but then having developed recurrent symptoms after returning to work. Dr. McCarthy then placed him in a short arm cast. However, plaintiff remained symptomatic.
2. Plaintiff subsequently underwent nerve testing and a bone scan, and Dr. McCarthy decided to refer him to Dr. Aulicino, a hand surgeon. On January 16, 1995, Dr. Aulicino examined him and found evidence of both median and ulnar nerve entrapment. Plaintiff was also diagnosed with a probable tear of the triangular fibrocartilage in the wrist. Dr. Aulicino ordered an arthrogram which showed a tear of the scapholunate ligament, and further nerve testing was consistent with median and ulnar nerve entrapment. Consequently, the doctor recommended surgery, but only to release the median and ulnar nerves at the wrist. He did not want to address the problem with the ligament at that time. On February 21, 1994, he performed the surgery recommended, but, despite the surgery, plaintiff continued to complain of persistent symptoms afterwards. Dr. Aulicino released him to return to light duty work in April, and in May, Dr. Aulicino recommended that plaintiff be evaluated by a doctor who did arthrosopic surgery.
3. On June 2, 1995, plaintiff was examined by Dr. Billet for a second opinion regarding his condition. Dr. Billet recommended surgery but indicated that plaintiff could perform light duty work in the meantime with minimum lifting with the right hand and with no vibratory or repetitive motions.
4. When Dr. Aulicino next saw plaintiff on June 14, he agreed that plaintiff should have surgery but, since he did not perform arthroscopic procedures, advised the rehabilitation nurse that plaintiff should be referred to a surgeon who did. However, plaintiff returned to him on July 19, 1995, stating that he did not want further surgery and wanted to be rated. Dr. Aulicino would not give him a rating until September 25, 1995, after being assured that it was appropriate to give a rating since plaintiff was refusing further treatment. He also advised plaintiff on that date that plaintiff could work in a job which did not involve using pneumatic or vibratory tools or lifting greater than fifteen pounds frequently or twenty-five pounds occasionally. Dr. Aulicino provided no further treatment or evaluations thereafter.
5. In October 1995, Thomas Broderick, the principal of defendant, offered plaintiff a job involving emptying trash cans, sweeping the garage floor, washing cars and vacuuming them, picking up litter and performing similar clean up work at the facility. Plaintiff told him that he had not made up his mind about whether he was going to return to work, but he then did not show up for work on November 1, 1995 as scheduled; nor did he report for work thereafter.
6. Defendant admitted liability for benefits under the Workers' Compensation Act for plaintiff's right hand and arm condition and paid compensation to him for temporary total disability. However, apparently plaintiff would not sign the Form 21 agreement sent to him, so no agreement was ever approved in the case. After he refused to return to work, defendant filed a Form 24 request to stop payment, but it was denied by Administrative Decision and Order filed January 22, 1996.
7. Defendant subsequently sent plaintiff for an independent medical examination to Dr. Spillman, who examined plaintiff on July 30, 1996. Plaintiff indicated that he was still having problems but that he had not changed his mind about surgery. Dr. Spillman was of the opinion that he could perform the job previously offered by defendant.
8. Plaintiff has continued to refuse to even try to return to work for defendant despite the fact that the job offered was within his restrictions and his capacity to perform. The duties involved were regularly performed by other employees of defendant, and the job was the type which would ordinarily be available in the job market.
9. Despite the work release by both Dr. Aulicino and Dr. Billet, plaintiff has continued to insist that he has been unable to work in any capacity and that he has therefore made no effort to look for work. However, defendant had surveillance conducted on plaintiff, and he was observed driving a van for Bateman's Garage. He was also seen with a white substance on his hands, which appeared to be something used in auto body repair. Although he testified that he was not working for Bateman's Garage or the Basemores (who operated that business and a clothing store) his testimony is not accepted as credible or convincing to the undersigned. He has been employed by them for an unknown period of time earning wages of undetermined amount at the same time he was receiving workers' compensation benefits from defendant.
10. As of September 25, 1995, plaintiff was capable of performing work which did not involve use of pneumatic or vibratory tools, or lifting in excess of fifteen pounds frequently or twenty-five pounds occasionally. The job offered to him by defendant was within these restrictions and suitable to his capacity. He refused the job without justification. Furthermore, he subsequently returned to work for another employer without advising defendant or the Industrial Commission and has never disclosed his earnings. Consequently, the Form 24 submitted by defendant was improvidently denied.
11. In view of his refusal to have further surgery, plaintiff reached maximum medical improvement by September 25, 1995. He sustained a thirty percent permanent partial disability to his right arm as a result of his occupational disease.
12. At the initial hearing of this case, plaintiff indicated that he was reconsidering his decision to not have surgery. However, he had not been evaluated by a surgeon for almost two years, and there was no current medical information indicating that surgery was still advisable. Furthermore, in view of the credibility issues raised by the case, there is a real question as to whether his symptoms are as severe as he has told the doctors. In addition, defendant has raised a last injurious exposure issue. Consequently, no findings are made regarding whether defendant should provide surgery at this time.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned make the following
 CONCLUSIONS OF LAW
1. Temporary total disability ends when a claimant reaches maximum medical improvement. Moretz v. Richards and Associates,Inc., 316 N.C. 539 (1986); Franklin v. Broyhill FurnitureIndustries, 123 N.C. App. 200 (1996).
2. Since plaintiff was offered suitable work as of November 1, 1995 which he refused without justification and since he subsequently return to work for another employer, he would not have been entitled to further indemnity compensation for his rating would provide a greater recovery than compensation, for actual wage loss after the end of the healing period. N.C. Gen. Stat. § 97-30; N.C. Gen. Stat. § 97-31; N.C. Gen. Stat. § 97-32; Guptonv. Builders Transport, 320 N.C. 38 (1987).
3. Plaintiff is entitled to compensation for seventy-two weeks for the thirty percent permanent partial disability he sustained to his right arm as a result of the occupational disease. However, defendant is entitled to a credit for compensation paid to plaintiff since September 25, 1995. N.C. Gen. Stat. § 97-31(13) and (19); N.C. Gen. Stat. § 97-42.
4. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. However, no determination is made at this regarding whether defendant should provide surgery to plaintiff due to a lack of sufficient convincing evidence of record concerning this issue. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 AWARD
1. Although compensation for permanent partial disability would be due pursuant to this decision, defendant has overpaid compensation to plaintiff at this time, and defendant is entitled to a credit in the amount of the overpayment as against any future compensation which may become due.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of this injury by accident. However, defendant is not being directed to provide surgery at this time.
IT IS FURTHERMORE ORDERED:
1. The Administrative Decision and Order filed January 22, 1996 is HEREBY RESCINDED.
2. This case shall be REMOVED from the Full Commission Hearing docket.
Each side shall bear its own costs.
This the 29th day of June, 1998.
 S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________ CHRISTOPHER SCOTT COMMISSIONER
JHB/kws