FRANKLIN v. BROYHILL FURNITURE INDUSTRIES

[123 N.C. App. 200 (1996)]

---

PEGGY S. FRANKLIN v. BROYHILL FURNITURE INDUSTRIES, (SELF-INSURED) AND TRIGON ADMINISTRATORS (ADMINISTERING AGENT)

No. COA95-1031

(Filed 16 July 1996)

1. **Workers' Compensation § 453 (NCI4th)— findings of Industrial Commission—binding on appeal**

There was competent evidence to support the Industrial Commission's findings in a workers' compensation case and those findings are binding on appeal.

**Am Jur 2d, Workers' Compensation § 709.**

2. **Workers' Compensation § 254 (NCI4th)— temporary total disability—maximum medical improvement—subsequent disability**

The Industrial Commission improperly awarded plaintiff in a workers's compensation case temporary total disability after the date on which the Commission determined that plaintiff reached maximum medical improvement; temporary total disability is payable only during the healing period, which ends when an employee reaches maximum medical improvement.

**Am Jur 2d, Workers' Compensation §§ 382, 431.**

3. **Workers' Compensation § 256 (NCI4th)— permanent partial disability—Form 21 presumption—impaired earning capacity**

The Industrial Commission erred in a workers' compensation action after concluding that plaintiff could recover permanent partial disability pursuant to N.C.G.S. § 97-31 by implicitly deter-

mining that plaintiff is not entitled to any disability pursuant to N.C.G.S. § 97-29 because it did not apply the presumption which arose upon the approval of the executed Form 21 agreement and thus improperly placed the burden on plaintiff. Upon the determination of plaintiff's N.C.G.S. § 97-31 disability, it was incumbent on the Commission to determine whether plaintiff was entitled to either permanent total disability pursuant to N.C.G.S. § 97-29, or permanent partial disability pursuant to N.C.G.S. § 97-30. Furthermore, because plaintiff's permanent work restrictions, which defendant does not dispute, support a finding that she is at least permanently partially disabled, and because there are no findings by the Commission that plaintiff justifiably refused employment procured by defendant which was suitable to this reduced capacity, it was error not to at least determine.the amount of plaintiff's impaired earning capacity pursuant to N.C.G.S. § 97-30.

**Am Jur 2d, Workers' Compensation §§ 381, 382.**

**4. Workers' Compensation § 224 (NCI4th)— treatment by unauthorized physician—approval within discretion of Commission**

There was no error in the Industrial Commission's conclusion in a workers' compensation action that defendant is not liable for the treatment of plaintiff by a doctor for whose treatment plaintiff did not seek authorization and because the treatment did not provide relief, effect a cure or lessen the period of disability. Even assuming that plaintiff's requests for authorization were sufficient, the approval of a physician lies within the discretion of the Commission pursuant to N.C.G.S. § 97-25 and plaintiff has not alleged, nor did the Court of Appeals find, any abuse of discretion. Earlier cases which required that the Commission's order of approval or disapproval of plaintiff's chosen physician be based upon findings of whether the medical care was reasonably required to effect a cure or give relief were based upon language subsequently deleted from the statute by the legislature.

**Am Jur 2d, Workers' Compensation §§ 436, 437.**

Judge WALKER concurring.

Appeal by plaintiff and defendant from Opinion and Award for the Full Commission entered 17 May 1995. Heard in the Court of Appeals 17 May 1996.

*Daniel & LeCroy, P.A., by M. Alan LeCroy, for plaintiff-appellant/appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, by Linda Hinson Ambrose and Erica B. Lewis, for defendant-appellee/appellant.*

GREENE, Judge.

Peggy S. Franklin (plaintiff) and Broyhill Furniture Industries (defendant) appeal from the 17 May 1995 Opinion and Award of the North Carolina Industrial Commission (Commission) which, pursuant to the Worker's Compensation Act, awarded plaintiff temporary total disability compensation, partial permanent disability, pursuant to N.C. Gen. Stat. § 97-31, future medical expenses, and a reasonable attorney fee and directed defendant to pay costs.

Plaintiff, "a 40 year old, tenth grade educated female" worked for defendant from September 1989, until 19 February 1992, as a rough end worker. On 15 January 1992, while working for defendant, plaintiff sustained a compensable injury by accident, "when she tripped and fell, landing on both knees." On 28 February 1992, the parties executed a Form 21 Agreement for Compensation for Disability, which stipulated that plaintiff suffered an "injury by accident arising out of and in the course of [her] employment" to her left knee and further agreed that plaintiff sustained a disability from the injury and provided weekly compensation "beginning February 26, 1992 and continuing for [a period] to be determined." Defendant paid temporary total disability to plaintiff pursuant to this Form 21 until the entry of the Deputy Commissioner's Opinion and Award in this case.

Plaintiff was treated "for complaints of left knee pain" by Dr. Stephen G. Fleming (Fleming), and on 26 March 1992 Fleming "excised a loose body and fibrotic fat pad from plaintiff's left knee" and ordered physical therapy. Plaintiff saw three doctors after Fleming's treatment, one of whom was to administer work hardening therapy and one, Dr. Walton Curl (Curl), whose treatment the Commission found was "not authorized by the defendant and was not authorized by the Industrial Commission except for a one time visit."

The Commission made the undisputed finding that all of plaintiff's physicians "have opined that plaintiff is capable of performing some range of sedentary work with restrictions, which include a permanent four (4) hour per day restriction, recommended self-pacing,

no bending, no stooping, no climbing, and no kneeling." The Commission also found that plaintiff "reached maximum medical improvement on January 4, 1993"[1] and that "she retains a 20% permanent partial impairment to her left leg." Because, the Commission found that plaintiff had reported no problems with her right leg, the Commission did not accept Curl's impairment rating of 20% as to plaintiff's right leg.

Based upon its findings of fact, the Commission made the following relevant Conclusions of Law:

1. As a result of the compensable injury, the plaintiff retains a 20% permanent partial disability to her left leg, for which she is entitled to 40 weeks of compensation should she choose to elect to receive this benefit. N.C.G.S. 97-31(15).

. . . .

4. The plaintiff has failed to prove by competent or convincing evidence that she is unable to work or obtain any employment. All of the medical evidence establishes that plaintiff has exaggerated complaints, has refused treatment, and has refused to cooperate with functional evaluations even after being ordered to comply on two occasions by Chief Deputy Commissioner Sellers.

5. Dr. Curl's treatment did not provide relief, effect a cure, or lessen the period of disability as plaintiff admits that she received no relief, cure, or lessening of disability from his treatment. Furthermore, the plaintiff did not request authorization to seek treatment by Dr. Curl from either the defendant or the Commission. Therefore, the defendant is not liable for this unauthorized treatment beyond the first visit.

6. The plaintiff is entitled to temporary total disability compensation until the end of the healing period [citation omitted] . . . .

As it appears that plaintiff remained incapable as of the time of the initial decision of earning wages, plaintiff is entitled to continued temporary total disability compensation from May 25, 1993 and continuing until such time as she returns to work within her restrictions or until further order by the Commission. . . .

---

1. Although denominated a conclusion of law, we treat this statement as a finding of fact, as it does not require the application of legal principles. *Gainey v. North Carolina Dept. of Justice*, 121 N.C. App. 253, 257 n.1, 465 S.E.2d 36-40 (1996).

Accordingly, the Commission awarded plaintiff temporary total disability compensation from 25 May 1993 until she returns to work within her restrictions, future medical expenses incurred by plaintiff as a result of these injuries, reasonable attorney fees, and ordered that defendant pay the costs of the hearing.

On 8 June 1995, defendant made a motion for reconsideration, requesting that the Commission reconsider its award of temporary total disability, because plaintiff did, in fact, return to work when she began her job at Domino's. The Commission denied defendants' motion on 13 June 1995. Plaintiff appealed from the Commission's 17 May 1995 order and the defendant cross-appealed from that same order.

The issues are whether (I) the Commission's findings are supported by competent evidence; (II) the Commission's conclusion granting plaintiff temporary total disability and denying plaintiff permanent disability are supported by the findings; and (III) the Commission erred in not awarding plaintiff the costs of her treatment by Curl.

I

[1] The Commission's findings are binding on appeal if they are supported by competent evidence.[2] *Andrews v. Fulcher Tire Sales and Serv.*, 120 N.C. App. 602, 605, 463 S.E.2d 425, 427 (1995). Moreover, the Commission may reject all or any part of any witness' testimony. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683-84 (1982). Both parties raise the issue of whether the findings are supported by the evidence. We have reviewed the evidence in this case, and determine that there is competent evidence to support the findings.

II

[2] Temporary total disability is payable only "during the healing period." N.C.G.S. § 97-31 (1991); *Carpenter v. Industrial Piping Co.*, 73 N.C. App. 309, 311, 326 S.E.2d 328, 329-30 (1985). The "healing

2. In determining whether the evidence is competent, we "must by definition apply those courtroom evidentiary rules and principles which embody the legal concept of 'competence.'" *Haponski v. Constructor's Inc.*, 87 N.C. App. 95, 97-98, 360 S.E.2d 109, 110 (1987); *see Johnson v. Charles Keck Logging*, 121 N.C. App. 598, 468 S.E.2d 420 (determining that blood alcohol test was incompetent evidence and could not support a finding of intoxication, in that there was "insufficient evidence to establish that [the] critical blood alcohol analysis was scientifically reliable"), *disc. rev. denied*, 343 N.C. 306, 471 S.E.2d 71 (1996).

period" ends when an employee reaches "maximum medical improvement." *Id.* Only when an employee has reached "maximum medical improvement" does the question of her entitlement to permanent disability arise.

Once an employee has reached her "maximum medical improvement," she may establish permanent incapacity pursuant to either section 97-29, -30, or -31. An employee may recover for an injury to a specifically listed body part, pursuant to N.C. Gen. Stat. § 97-31, or for any inability to earn wages, resulting from injury to that body part, pursuant to N.C. Gen. Stat. § 97-29 or -30. The employee, however, may not recover pursuant to section 97-31 and section 97-30 (or 97-29) simultaneously, but has the option of choosing the more favorable recovery. *Gupton v. Builders Transp.*, 320 N.C. 38, 43, 357 S.E.2d 674, 678 (1987). When incapacity arises from both a scheduled, section 97-31 injury and a non-scheduled injury, recovery is permitted for both the scheduled injury, pursuant to section 97-31, and any incapacity from the non-scheduled injury, pursuant to section 97-29 or section 97-30. *Gray v. Carolina Freight Carriers*, 105 N.C. App. 480, 485, 414 S.E.2d 102, 105 (1992).

An employee seeking disability compensation must establish the existence and extent of her disability. *Radica v. Carolina Mills*, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994); *Tyndall v. Walter Kidde Co.*, 102 N.C. App. 726, 731, 403 S.E.2d 548, 550, *disc. rev. denied*, 329 N.C. 505, 407 S.E.2d 553 (1991). Disability refers to decreased earning capacity. *Tyndall*, 102 N.C. App. at 730, 403 S.E.2d at 550. To receive compensation for a permanent total disability, an employee must show that she is "totally unable to 'earn wages which . . . [she] was receiving at the time [of injury] in the same or any other employment.'" *Burwell v. Winn-Dixie Raleigh*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994) (quoting *Tyndall*, 102 N.C. App. at 730, 403 S.E.2d at 550). A reduction in wages resulting from a compensable injury will only support permanent partial disability and not a total disability. *See Tyndall*, 102 N.C. App. at 731, 403 S.E.2d at 551. Once the Commission approves a Form 21 Agreement between the parties, the employee receives the benefit of a presumption that she is totally disabled.[3] *See Stone v. G & G Builders*, 121 N.C. App. 671, 674, 468 S.E.2d 510, 512 (1996). Thus, the approval of the Form 21 by the Commission relieves the employee of her initial burden.

---

3. We do not address, as the issue is not presented in this case, the effect of a Form 21 agreement that sets disability for a specified period of time and the matter appears for its initial hearing before the Industrial Commission (or a deputy commissioner) after the expiration of that specified period of time.

Upon a showing of disability by the employee, including the approval of an executed Form 21, the employer may produce evidence that suitable jobs are available for the employee and " 'that the [employee] is capable of getting one,' " taking the employee's physical and vocational limitations into account. *Burwell*, 114 N.C. App. at 73, 441 S.E.2d at 149 (quoting *Kennedy v. Duke Univ. Medical Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990)). A job is "suitable" if the employee is capable of performing the job, given her "age, education, physical limitations, vocational skills, and experience." *Id.* An employee is "capable of getting" a job if there is " 'a reasonable likelihood . . . that [she] would be hired if [she] diligently sought the job.' " *Id.* at 73-74, 441 S.E.2d at 149 (quoting *Trans-State Dredging v. Benefits Review Bd.*, 731 F.2d 199, 201 (4th Cir. 1984)).

Once the employer produces evidence that disputes the employee's disability, the employee may "produc[e] evidence that either contests the availability of other jobs or [her] suitability for those jobs, or establishes that [she] has unsuccessfully sought the employment opportunities located by her employer." *Id.* at 74, 441 S.E.2d at 149.

At any point, however, the employer may show that the employee has unjustifiably "refuse[d] employment procured for [her] suitable to [her] capacity," and if the employer's evidence is accepted by the Commission, the employee is not entitled to any benefits pursuant to section 97-29 or section 97-30. N.C.G.S. § 97-32 (1991); *McCoy v. Oxford Janitorial Serv. Co.*, 122 N.C. App. 730, 733, 471 S.E.2d 662, 665 (1996).

### Temporary Disability

In this case, the Commission determined, and plaintiff does not dispute, that plaintiff reached maximum medical improvement on 4 January 1993. Thus, it was improper to award the plaintiff temporary total disability after this date.

### Permanent Disability

[3] The Commission concluded that plaintiff could recover permanent partial disability, pursuant to section 31, based upon her scheduled knee injury. This conclusion is not disputed by either party. Upon the determination of plaintiff's section 97-31 disability, it was incumbent on the Commission to determine whether plaintiff was entitled to either permanent total disability, pursuant to section 97-29, or per-

manent partial disability, pursuant to section 97-30. The Commission erred in its implicit determination that plaintiff is not entitled to any disability pursuant to section 97-29, because it did not apply the presumption which arose upon the approval of the executed Form 21 agreement and thus, improperly placed the burden on the plaintiff. Furthermore, because the plaintiff's permanent work restrictions, which defendant does not dispute, support a finding that she is at least permanently, partially disabled, *see Stone*, 121 N.C. App. at 674, 468 S.E.2d at 512, and because there are no findings by the Commission that plaintiff unjustifiably refused employment procured by defendant, which was suitable to this reduced capacity, it was error not to at least determine the amount of plaintiff's impaired earning capacity, pursuant to section 97-30. Accordingly, the case must be remanded for application of the appropriate standard and if the Commission determines that plaintiff is entitled to benefits pursuant to section 97-29, or section 97-30, the plaintiff is entitled to choose whether to recover for her scheduled disability, pursuant to section 97-31, or for any permanent incapacity, pursuant to section 97-29 or section 97-30.

### III

[4] The Commission concluded that defendant is not liable for Curl's treatment of plaintiff, because plaintiff did not seek authorization for this treatment and because Curl's treatment "did not provide relief, effect a cure or lessen the period of disability." Plaintiff argues that this conclusion is error, because "plaintiff requested authorization of Dr. Curl's medical treatment five different times" and the Commission never responded to these requests.

Even assuming that plaintiff's requests for authorization were sufficient, the approval of a physician, pursuant to N.C. Gen. Stat. § 97-25, lies within the discretion of the Commission. The present statute, which is the one applicable to this case, reads:

Medical compensation shall be provided by the employer. . . . Provided, however, if he so desires, an injured employee may select a physician of his own choosing . . . subject to the approval of the Industrial Commission.

N.C.G.S. § 97-25 (1991). The unambiguous language of this statute, thus, leaves the approval of a physician within the discretion of the Commission and the Commission's determination may only be reversed upon a finding of a manifest abuse of discretion. *See White*

FRANKLIN v. BROYHILL FURNITURE INDUSTRIES

[123 N.C. App. 200 (1996)]

*v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (where matters left to fact finder's discretion, may only reverse upon finding of manifest abuse of discretion). Plaintiff has not alleged, nor do we find, any abuse of discretion.

We are aware that earlier cases required that a Commission's order of approval or disapproval of the plaintiff's chosen physician be based upon findings whether the medical care was "reasonably required to effect a cure or give relief." *Roberts v. ABR Assocs., Inc.*, 101 N.C. App. 135, 142, 398 S.E.2d 917, 920 (1990); *Schofield v. The Great Atlantic & Pacific Tea Co.*, 299 N.C. 582, 594-95, 264 S.E.2d 56, 64 (1980). That language, however, was taken directly from the statute itself and the language was subsequently deleted by our legislature. N.C.G.S. § 92-25 (pre 1991 amendment).

Reversed and remanded.

Judge MARTIN, John C., concurs.

Judge WALKER concurs with separate opinion.

Judge WALKER concurring.

I concur with the majority opinion in this case and agree that the case must be remanded to the Industrial Commission (the Commission) to determine whether plaintiff was entitled to either permanent total disability, pursuant to section 97-29, or partial disability, pursuant to section 97-30. I also agree that the Commission improperly placed the burden of establishing disability on the plaintiff because it failed to apply the presumption which arose upon the approval of the executed Form 21 when it concluded that plaintiff failed to prove that she was unable to work or obtain any employment.

It is well established that upon the signing of a Form 21 agreement for temporary total disability benefits, the plaintiff is entitled to a presumption of continuing total disability. *Dalton v. Anvil Knitwear*, 119 N.C. App. 275, 283-4, 458 S.E.2d 251, 257, *disc. review denied*, 341 N.C. 647, 462 S.E.2d 507 (1995). Although the plaintiff in this case did not argue that she was entitled to this presumption, numerous decisions by our Court have held that where there has been a previous determination that the employee is disabled as evidenced by the approval of a Form 21, the employee is entitled to a presump-

tion of continuing disability. *Watkins v. Motor Lines*, 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971); *But see Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Thus, where the parties entered into a Form 21, it was error for the Commission not to apply a presumption of continuing total disability irrespective of whether this issue was raised by the plaintiff.

I write separately to elucidate what is required by the employer to rebut the presumption of total disability which arises upon the approval of a Form 21. The presumption of total disability may be rebutted not only by a showing of the capacity to earn the same wages, but also by a showing of the capacity to earn lesser wages.

For example, the presumption of total disability may be rebutted by evidence that the employee is capable of earning **some** wages, albeit wages less than the wages earned at the time of injury. Specifically, the employer must produce evidence that:

(1) suitable jobs are available for the employee;

(2) that the employee is capable of getting said job taking into account the employee's physical and vocational limitations;

(3) and that the job would enable employee to earn some wages.

In cases where the employer produces such evidence, the burden shifts back to the employee to show either that jobs are not available, they are not suitable considering his/her condition, or he/she has unsuccessfully sought employment opportunities by the employer. *Tyndall v. Walter Kidde Co.*, 102 N.C. App. 726, 732, 403 S.E.2d 548, 551, *cert. denied*, 329 N.C. 505, 407 S.E.2d 553 (1991). Where the employee fails to meet this burden, the plaintiff continues to be disabled but the disability changes from a total disability to a partial disability under section 97-30, due to impaired earning capacity. *See Kennedy v. Duke Univ. Med. Center*, 101 N.C. App. 24, 398 S.E.2d 677 (1990).

In addition, an employer may rebut the presumption of total disability by producing evidence that the employee is capable of returning to work at wages equal to those the employee was receiving at the time of injury in order to show that the employee is no longer disabled. *Radica v. Carolina Mills*, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994). Upon this showing, the burden then shifts to the employee to show that he/she is disabled as defined by the Workers' Compensation Act.

At any point, however, the employer may show that the employee has unjustifiably "refuse[d] employment procured for [her] suitable to [her] capacity." N.C. Gen. Stat. § 97-32 (1991). If this evidence is accepted by the Commission, the employee is precluded from receiving benefits pursuant to sections 97-29 or 97-30. *McCoy v. Oxford Janitorial Service Co.*, *122* N.C. App. 730, 733, 471 S.E.2d 662, 664-65 (1996).