The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. As of the date of hearing, plaintiff was sixty-one years old. She worked for defendant and its predecessor for approximately twenty-five years prior to February 24, 1993 when she sustained a compensable injury by accident. On that date she slipped and fell face forward in the break room. The next day Dr. Bond, a general surgeon who was the company doctor, examined her. He treated her conservatively for a contusion of her flank and back area and for a low back strain. She later began to complain of some pain in her neck, so he also diagnosed a cervical strain. Dr. Bond released her to return to work at light duty on a part-time basis on April 21, 1993 and she returned to work on April 26, 1993. However, since her symptoms were persisting despite treatment, she requested a second opinion from Dr. Adams, an orthopedic surgeon.
2. Defendant, who had admitted liability for the injury pursuant to a Form 21 agreement which was approved by the Industrial Commission, allowed plaintiff to see Dr. Adams and he examined her on April 15, 1993. His impression was that she had an acute cervical and lumbosacral strain superimposed on early degenerative changes. He prescribed medication for her. She continued to complain of pain, so in July he ordered at CT scan. The test did not show a definite disc herniation but there were some abnormalities which Dr. Adams did not consider to be remarkable. He continued to recommend that she work on a part-time basis until August 23, 1993 when she reported so much pain that he excused her from work for a two-week period. Dr. Adams continued to treat her conservatively and she did not return to work through October, but her failure to return to work was due in part to the fact that she told the doctor that defendant did not have light work available, a fact which she knew was not true.
3. By November 1, 1993 Dr. Adams learned that there was suitable light duty positions available so he released plaintiff to return to work for two to three hours per day, and she returned to work the following day. After returning to work she continued to complain of pain, so she was sent to Dr. Nitka, another orthopedic surgeon. Dr. Nitka examined her on December 14, 1993. He found evidence of mild spondylolisthesis which might have been exacerbated by the injury, but she also showed numerous signs of psychological overlay. Consequently, he recommended a complete myelogram and nerve tests to rule out a discogenic cause for her problem and then, if no significant findings were revealed, a psychological evaluation. However, plaintiff informed Dr. Adams on February 1, 1994 that she did not want dye placed in her spine, so she would not have the myelogram. Dr. Adams did not recommend further diagnostic tests and indicated that he did not have anything further to offer medically so he sent her for a functional capacity evaluation which she underwent on March 2, 1994. The physical therapist noted that she did not give full effort and, in fact, did not cooperate on some of the tests. There was also evidence of significant symptom magnification. She was approved for sedentary light work and several jobs at the plant were specifically approved for her.
4. On March 30, 1994 Dr. Adams released plaintiff from his care at maximum medical improvement. He instructed her to return to work for defendant on April 4, 1994 at one of the light jobs offered by the plant for two hours per day. He saw her again on April 14 and 26, 1994 and found her condition to be the same. There were no records indicating further treatment by him, but in November 1994 he wrote to Dr. Bond to refer plaintiff back to Dr. Bond's care because he no longer felt comfortable treating her. Defendant then offered plaintiff the option of seeing any of several doctors, and in February 1995 she asked to see Dr. DuPuy, an orthopedic surgeon in Charlotte.
5. Dr. DuPuy evaluated plaintiff on March 1, 1995. She was working two hours per day at that point in a light duty capacity and he was of the opinion that it was a big mistake to have limited her to those hours. He diagnosed her condition as a chronic neck and back sprain with no evidence of nerve root involvement and recommended that she increase her activities so that she would gradually move up to an eight hour workday. In his opinion, she had reached maximum medical improvement.
6. Plaintiff went on her own to Dr. Watson, a general surgeon, and he began treating her on October 17, 1994. He treated her with medication, heat and trigger point injections, but she continued to complain of pain. On March 3, 1995 he took her out of work, although she apparently had already stopped working sometime the previous month. He subsequently referred her to Dr. Grobler, an orthopedic surgeon at Bowman Gray, who examined her on April 27, 1995. Dr. Grobler found that she appeared depressed, that her verbalization of symptoms was disproportionate to the findings and that she was demonstrating excessive pain behavior. He recommended a rehabilitation program to help restore her function.
7. Thereafter, plaintiff returned to Dr. Watson for further symptomatic treatment, but her overall condition did not appear to improve under his care. He diagnosed her condition as fibromyalgia, a condition of unknown cause. She did not tell him about her injury at work and he expressed no opinion regarding the causation of the condition he treated.
8. Defendant filed a Form 24 request to stop payment with the Commission and an informal hearing was conducted by telephone. By Administrative Decision and Order filed July 20, 1995, defendant was allowed to terminate payment of compensation to plaintiff effective May 15, 1995.
9. As a result of her compensable injury on February 24, 1993 plaintiff was unable to work until April 26, 1993. She was then capable of working at light duty on a part-time basis until August 23, 1993 when she again became unable to work in any capacity. Beginning November 2, 1993 she was able to work on a part-time basis and was able to work at least two hours per day until March 1, 1995. Although her functional capacity evaluation was invalid due to lack of effort on her part, in that it nevertheless showed that she could work more hours, and although Dr. Bond had recommended a gradual increase in her working hours, since Dr. Adams limited her to two hours per day beginning April 4, 1994, it was appropriate for her to limit her working hours to two hours per day. However, as of March 2, 1995 she should have begun working three hours per day and should have gradually increased her working hours by one each week thereafter until she was working a regular eight-hour day. Consequently, as of April 13, 1995 she was capable of working on a full-time basis and earning her regular wages.
10. Defendant offered suitable work to plaintiff which was very light and which could be performed while standing or sitting. She was capable of performing the work offered and it would have been beneficial for her condition for her to have increased her activities and work hours as directed by the doctor. Her allegation of total and permanent disability was not supported by the evidence.
11. Plaintiff reached maximum medical improvement on March 1, 1995. She sustained a seven percent permanent partial disability to her back as a result of her injury at work. She would receive greater compensation for her rating than for her actual wage loss after that date, and it is presumed that she would choose the more munificent remedy.
12. It is also worthy of note that although plaintiff had pre-existing back problems, she did not advise her doctors of that fact and denied it in her testimony. Her memory also became very cloudy on cross-examination.
* * * * * * * * * * *
Based upon the findings of fact, the Full commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff was entitled to compensation for temporary partial disability through March 1, 1995 at the rate of two thirds of the difference between her former average weekly wage of $304.46 and the wages she was able to earn working two hours per day. Defendant apparently paid her this compensation and would be entitled to a credit. G.S. § 97-30.
2. Temporary total disability ends when a claimant reached maximum medical improvement. Mortez v. Richards and Associates,Inc., 316 N.C. 539 (1986); Franklin v. Broyhill FurnitureIndustries, 123 N.C. App. 200 (1996).
3. Plaintiff may elect to receive benefits under either G.S. § 97-30 for actual wage loss or G.S. § 97-31 for scheduled benefits. Gupton v. Builders Transport, 320 N.C. 38 (1987).
4. Plaintiff is entitled to compensation at the rate of $202.98 per week for twenty-one weeks beginning March 2, 1995 for the seven percent permanent partial disability she sustained to her back as a result of this injury by accident. However, this compensation is subject to a credit for compensation previously paid by defendant after that date. G.S. § 97-31(23).
5. Plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident from authorized treating physicians. G.S. § 97-2(19); G.S. § 97-25.
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay compensation to plaintiff at the rate of $202.98 per week for 21 weeks for her permanent partial disability but subject to a credit for compensation previously paid by defendant after March 1, 1995. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of this injury by accident from authorized treating physicians.
3. Defendant shall pay the costs.
4. An attorney's fee in the rate of twenty-five percent of the net compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to Mr. Smith.
 S/ ___________________ MARGARET MORGAN DEPUTY COMMISSIONER
CONCURRING:
S/ ___________________ THOMAS J. BOLCH COMMISSIONER
S/ ___________________ GEORGE T. GLENN, II DEPUTY COMMISSIONER
MM:db