SHELBY J. DESKINS, Employee-Plaintiff v. ITHACA INDUSTRIES, INC., Employer-Defendant, THE HARTFORD ACCIDENT & INDEMNITY INSURANCE COMPANY, Carrier-Defendant

No. COA97-1567

(Filed 29 December 1998)

## 1. Workers' Compensation— change of treating physicians— unilateral decision

The Industrial Commission's order that plaintiff's benefits be suspended was not supported by the record after the finding that plaintiff unjustifiably refused to cooperate with vocational rehabilitation in that she unilaterally changed treating physicians was set aside. Plaintiff was statutorily authorized to seek medical treatment from a physician other than one provided by defendants and was not obligated to procure the approval of defendants or the Commission prior to seeking such treatment. All that is required of the employee is that she secure the approval of the Commission within a reasonable time after she has selected a physician of her own choosing. N.C.G.S. § 97-25.

## 2. Workers' Compensation— vocational rehabilitation— attorney's role

The Industrial Commission erred by finding that a letter from plaintiff's attorney to her vocational rehabilitation nurse requesting that the nurse contact him directly amounted to a refusal by plaintiff to cooperate with the rehabilitation procedure and concluding that suspension of plaintiff's workers' compensation benefits was warranted. There is absolutely no evidence in the record

**DESKINS v. ITHACA INDUSTRIES, INC.**

[131 N.C. App. 826 (1998)]

that plaintiff refused any rehabilitative procedure ordered by the Commission. N.C.G.S. § 97-25.

### 3. Workers' Compensation— approval of physician—discretion of Commission

The Industrial Commission did not abuse its discretion in a workers' compensation action by denying further treatment by a physician chosen by plaintiff. N.C.G.S. § 97-25 permits an injured employee to select a physician subject to the Commission's approval; the unambiguous language of the statute leaves the approval of a physician within the discretion of the Commission.

Appeal by plaintiff from opinion and award entered 23 September 1997 by the North Carolina Industrial Commission. Heard in the Court of Appeals 15 September 1998.

*Franklin Smith for plaintiff-appellant.*

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr., for defendants-appellees.*

TIMMONS-GOODSON, Judge.

Shelby J. Deskins ("plaintiff") appeals from an opinion and award of the North Carolina Industrial Commission ("the Commission") suspending her workers' compensation benefits based upon its finding that she refused to cooperate with vocational rehabilitation procedures. Based upon the analysis that follows, we affirm in part, reverse in part and remand.

At the time of the hearing, plaintiff was 53 years of age, had a high school education, and was an experienced factory worker. On 22 April 1993, the Commission approved a Form 21 Agreement, whereby Ithaca Industries, Inc. and the Hartford Accident & Indemnity Insurance Company (collectively, "defendants") accepted liability for plaintiff's carpal tunnel syndrome. An amended Form 21 was subsequently filed and approved.

In December of 1992, plaintiff began treatment with Dr. Malcolm Marks for carpal tunnel syndrome. Dr. Marks treated plaintiff conservatively until 18 March 1993, when he performed a left carpal tunnel release surgery. Following the surgery, plaintiff's condition steadily improved, but in May of 1993, she began to experience significant discomfort in her left wrist. Dr. Marks examined plaintiff on 6 August 1993 and noted that the physical therapy had not helped plaintiff's

condition. Thereafter, plaintiff became dissatisfied with Dr. Marks and requested a second opinion regarding her medical treatment. Defendants arranged a second opinion with Dr. David Gower, who examined plaintiff on 29 September 1993 and diagnosed the condition in her hand as "ischemia." Dr. Gower noted that plaintiff's hand was white and cold and that the pulse in her wrist was poor. He discussed these problems with plaintiff's vocational rehabilitation nurse, Linda Swaim, and recommended a second opinion with Dr. Thomas Mutton.

Defendants scheduled a second opinion with Dr. Mutton, a vascular surgeon who examined plaintiff on 29 September 1993. Dr. Mutton performed vascular studies on plaintiff's hand, which proved negative for thoracic outlet syndrome. After her examination by Dr. Mutton, plaintiff told Swaim that she liked Dr. Mutton and preferred to have him as her primary treating physician. Defendants authorized plaintiff's change of treatment to Dr. Mutton.

Plaintiff complained to Dr. Mutton of pain in her left wrist where Dr. Marks had performed the release surgery. For this reason, Dr. Mutton scheduled a re-exploration surgery of the left carpal tunnel, which he performed on 28 October 1993. This surgery resulted in some relief to plaintiff, and she experienced only slight discomfort in her wrist following the surgery. Then, on 6 January 1994, Dr. Mutton performed a right carpal tunnel release. Plaintiff complained of some pain after this surgery, but she made improvement. Dr. Mutton last examined plaintiff on 9 May 1994, at which time he assigned a 0% permanent partial disability rating to both of her hands.

On 8 June 1994, Dr. Mutton released plaintiff to return to work for six hours a day, with instructions that she resume her full-time schedule after completing her home physical therapy. Plaintiff required much coaxing to put forth her maximum effort in the home physical therapy, and after returning to work, she continued to complain of pain in her wrist and maintained that she needed additional medical treatment.

Plaintiff's attorney then filed a motion with the Commission on 16 June 1994, requesting it to approve either Dr. Poehling or Dr. Marks as plaintiff's primary physician. The Chief Claims Examiner of the Commission, Martha A. Barr, reviewed the motion and instructed plaintiff to request a hearing, because the matter could not be resolved administratively. Plaintiff filed a request for hearing on 28 July 1994; however, at her attorney's instruction but without autho-

DESKINS v. ITHACA INDUSTRIES, INC.

[131 N.C. App. 826 (1998)]

rization from defendants or the Commission, plaintiff sought treatment from Dr. Marks on 19 August 1994. Like Dr. Mutton, Dr. Marks was of the opinion that plaintiff could work six hours a day, but plaintiff continued to complain of pain, so Dr. Marks performed a carpal tunnel release on 22 September 1994.

On 30 August 1994, defendants responded to plaintiff's request for a hearing and, therein, stated the following: "[P]laintiff has unilaterally changed treating physicians to Dr. Marks. Defendants have not authorized treatment with Dr. Marks. Plaintiff was returned to work by Dr. Mutton and is now doctor shopping." On 8 November 1994, defendants filed a motion to suspend plaintiff's benefits, pursuant to section 97-25 of the North Carolina General Statutes, alleging that "plaintiff's refusal of accepting medical treatment and rehabilitative procedure is not justified." These matters came on for hearing before Special Deputy Commissioner D. Bernard Alston on 19 November 1994.

After receiving plaintiff's medical records and the depositions of Drs. Marks and Mutton, Commissioner Alston entered an opinion and award on 8 April 1997 finding that the medical treatment rendered by Dr. Marks after 6 August 1993, including the release surgery performed 22 September 1994, was probably medically necessary to assist plaintiff with her condition. Commissioner Alston, however, found as follows regarding plaintiff's compliance with vocational rehabilitation treatment:

Plaintiff has failed to cooperate with vocational rehabilitation. Plaintiff's attorney has also obstructed vocational rehabilitation. Plaintiff's refusal to cooperate with vocational rehabilitation is unjustified and unreasonable. Plaintiff's failure to cooperate with vocational rehabilitation began August 27, 1994, the date that Plaintiff's attorney wrote to the vocational rehabilitation case manager, Linda Swaim, and instructed her not to contact Plaintiff directly.

Based upon these findings, Commissioner Alston ordered defendants to pay for the medical treatment rendered by Dr. Marks, but regarding future treatment, the commissioner stated the following: "[T]he Commission disapproves and does not authorize further treatment by Dr. Malcom Marks as Plaintiff's treating physician. Plaintiff shall return to Dr. Mutton or any other physicians directed by Defendants." In addition, the commissioner suspended plaintiff's temporary total disability compensation until she cooperated with voca-

tional rehabilitation. Commissioner Alston further ordered plaintiff to fully cooperate with her rehabilitation nurse, Swaim, and directed Swaim to resume vocational rehabilitation if approved by Dr. Mutton. Upon plaintiff's resumption of rehabilitation, defendants were to resume temporary total disability benefits as appropriate. Plaintiff appealed this decision to the Full Commission, and the Commission adopted the opinion and award of Commissioner Alston. Plaintiff again appeals.

---

Plaintiff's sole assignment of error is that the Commission failed to follow the greater weight of the evidence in arriving at its decision. Plaintiff contends that for this reason, the opinion and award should be reversed and the case remanded for new findings. While plaintiff would steer us in a different direction, we conclude that the issues presented to us on this appeal are (1) whether the Commission erred in suspending plaintiff's benefits based upon its finding that she unjustifiably refused to cooperate with rehabilitation procedure and (2) whether the Commission erred by denying further treatment by Dr. Marks and ordering plaintiff to continue treatment with those physicians directed by defendants. We address these questions in turn.

The standard of review on appeal from an order of the Industrial Commission is well-settled. The appellate court must determine whether the Commission's findings of fact are supported by any competent evidence of record and whether those findings, in turn, support the Commission's conclusions of law. *In re Stone v. G&G Builders*, 346 N.C. 154, 157, 484 S.E.2d 365, 367 (1997). As the factfinder, the Commission is the sole judge of the credibility of the witnesses and the weight to be accorded their testimony. *Dolbow v. Holland Industrial*, 64 N.C. App. 695, 697, 308 S.E.2d 335, 336 (1983). Hence, the Commission's findings of fact are binding on this Court, if there is any evidence in the record to support them. *Murray v. Associates Insurers, Inc.*, 341 N.C. 712, 714, 462 S.E.2d 490, 491 (1995). This is true, despite the presence of other evidence which might support contrary findings. *Id.* Nonetheless, the Commission's findings of fact may be set aside where " 'there is a complete lack of competent evidence to support them.' " *Mayo v. City of Washington*, 51 N.C. App. 402, 406, 276 S.E.2d 747, 750 (1981) (quoting *Click v. Freight Carriers*, 300 N.C. 164, 166, 265 S.E.2d 389, 390-91 (1980)).

Central to our analysis is section 97-25 of the General Statutes, which provides as follows:

DESKINS v. ITHACA INDUSTRIES, INC.

[131 N.C. App. 826 (1998)]

If in an emergency on account of the employer's failure to provide the medical or other care as herein specified a physician other than provided by the employer is called to treat the injured employee, the reasonable cost of such service shall be paid by the employer if so ordered by the Industrial Commission.

Provided, however, if [s]he so desires, an injured employee may select a physician of [her] own choosing to attend, prescribe and assume the care and charge of [her] case, subject to the approval of the Industrial Commission.

N.C. Gen. Stat. 97-25 (Cum. Supp. 1997). In *Schofield v. Tea Co*, 299 N.C. 582, 264 S.E.2d 56 (1980), our Supreme Court interpreted the above language to mean that "an injured employee has the right to procure, even in the absence of an emergency, a physician of [her] own choosing, subject to the approval of the Commission." *Id.* at 591, 264 S.E.2d at 62. Additionally, the Court held that under the statute, an employee need not notify the employer or obtain the Commission's approval in advance of the change. *Id.* at 592, 264 S.E.2d at 63. All that is required of the employee is that she secure the "approval of the Commission within a reasonable time after [s]he has selected a physician of [her] own choosing to assume treatment." *Id.* at 593, 264 S.E.2d at 63.

[1] Evidence before the Commission in the present case tended to show that due to persistent pain in her wrists following her release by Dr. Mutton to return to work, plaintiff requested that her primary physician be changed to either Dr. Poehling or Dr. Marks. When defendants denied this request, plaintiff's attorney filed a motion on 16 June 1994, requesting the Commission to approve the change. However, before receiving the Commission's approval, plaintiff went to Dr. Marks for treatment, and on 22 September 1994, he performed a carpal tunnel release surgery on plaintiff's hand, which the Commission later concluded was medically necessary.

As we have previously noted, plaintiff was statutorily authorized to seek medical treatment from a physician other than one provided by defendants. Furthermore, she was not obligated to procure the approval of defendants or the Commission prior to seeking such treatment. Therefore, plaintiff's unilateral decision to change treating physicians is not adequate to support the Commission's finding that she unjustifiably refused to cooperate with vocational rehabilitation, and this finding must be set aside. Absent this finding, there is no sup-

port for the Commission's order that plaintiff's benefits be suspended as of August 1994.

**[2]** Defendants argue, however, that plaintiff's attorney improperly thwarted Swaim's attempts to work with plaintiff. Defendants contend, and the Commission agreed, that the attorney's letter of 27 August 1994 requesting that Swaim contact him directly amounted to a refusal by plaintiff to cooperate with rehabilitation procedure. The Commission relied on this finding as well in support of its conclusion that suspension of plaintiff's benefits was appropriate under 97-25. However, the relevant provision of section 97-25 states as follows:

> The refusal of the employee to <u>accept</u> any medical, hospital, surgical or other treatment or rehabilitative procedure <u>when ordered by the Industrial Commission</u> shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal, in which case, the Industrial Commission may order a change in the medical or hospital service.

N.C.G.S. § 97-25 (emphasis added). The language of this statute is quite specific, and the bar to compensation does not apply unless the employee "refus[es] . . . to accept any . . . rehabilitative procedure when ordered by the Commission." *Id.* There is absolutely no evidence in the record that plaintiff refused any rehabilitative procedure ordered by the Commission. Thus, the Commission erred in concluding that the letter to Swaim from plaintiff's attorney warranted suspension of plaintiff's benefits, and we reverse the opinion and award accordingly.

**[3]** The remaining issue is whether the Commission erred in disapproving further treatment of plaintiff by Dr. Marks. As previously noted, section 97-25 of the General Statutes permits an injured employee to "select a physician of [her] own choosing . . . subject to the approval of the Industrial Commission." As this Court held in *Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 472 S.E.2d 382, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996), "[t]he unambiguous language of this statute . . . leaves the approval of a physician within the discretion of the Commission and the Commission's determination may only be reversed upon a finding of

a manifest abuse of discretion." *Id.* at 207, 472 S.E.2d at 387. Plaintiff has not shown, nor do we discern, any abuse of discretion. Accordingly, we uphold the Commission's denial of further treatment by Dr. Marks. For the foregoing reasons, the opinion and award of the Industrial Commission is affirmed in part, reversed in part, and this cause remanded for entry of an opinion and award consistent with this opinion.

Affirmed in part, reversed and remanded.

Judges GREENE and SMITH concur.