AMY JAVORSKY, Employee, Plaintiff v. NEW HANOVER REGIONAL MEDICAL CENTER, Employer, SELF-INSURED (ALLIED CLAIMS ADMINISTRATION, INC., Servicing Agent), Defendant

No. COA10-454

(Filed 21 December 2010)

**1. Workers' Compensation— neck injury—findings—medical treatment required—supported by evidence**

The Industrial Commission did not err in a workers' compensation case by finding and concluding that plaintiff required medical treatment for her neck injury and that her employer, a hospital, was financially responsible. There was medical testimony that took the case out of the realm of conjecture and remote possibility and provided sufficient, competent evidence of a proximate causal relation to support the Commission's findings and subsequent conclusion.

**2. Workers' Compensation— neck injury—microsurgery— treating physicians—two hundred miles apart**

The Industrial Commission did not err in a workers' compensation case by appointing treating physicians located 200 miles apart where there were unchallenged findings that less invasive microsurgery was a reasonable option. Given the practical considerations of follow-up visits to the provider of the microsurgery,

JAVORSKY v. NEW HANOVER REG'L MED. CTR.

[208 N.C. App. 644 (2010)]

the Commission did not abuse its discretion by ordering defendant to pay for plaintiff's reasonable medical treatment as well as attendant travel expenses.

**3. Workers' Compensation— findings—current status—evidence at hearing**

There was no error or prejudice in a workers' compensation hearing where the Industrial Commission made findings about the current status of plaintiff and of the patient safety manager for defendant employer. Those findings were based on competent evidence received as of the date of the hearing.

**4. Workers' Compensation— attorney fees—stubborn litigiousness**

The Industrial Commission did not abuse its discretion in a workers' compensation case by ordering defendant to pay attorney fees to plaintiff's attorney where defendant's denials of plaintiff's claim evidenced stubborn, unfounded litigiousness.

Appeal by defendant from Opinion and Award entered 13 January 2010 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 October 2010.

*Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson, for plaintiff-appellee.*

*Hedrick, Garner, Kincheloe & Garofalo, L.L.P., by Kari A. Lee and Justin D. Robertson, for defendant-appellant.*

BRYANT, Judge.

Because there is competent evidence of a proximate causal relation between the tasks performed during the course of employment and the injury sustained, the Industrial Commission's finding of fact as to the existence of such a relation is upheld despite evidence to the contrary. For the reasons stated herein, we affirm the Opinion and Award of the North Carolina Industrial Commission.

The evidence presented to the North Carolina Industrial Commission (the Commission) tends to indicate the following. Plaintiff Amy Javorsky (Javorsky) was employed as a registered nurse by defendant New Hanover Regional Medical Center (New Hanover Regional) in the step-down intensive care unit. The step-

down unit receives patients on their way to and from intensive care and from the emergency department. Javorsky testified that most of the patients in the step-down unit are "total-care" patients: among other duties, nurses are required to reposition the patients every two to three hours; get patients out of bed; and ambulate them. In repositioning a patient, nurses often move the patient with the use of a "draw sheet" that allows the nurses to slide or roll the patient in the patient bed. Moving a patient between a bed and a chair, nurses have the option of performing a "total body lift," by sliding a blanket under the patient and lifting the blanket.

On 18 June 2007, Javorsky was working with a patient from a nursing home. The patient was "small, frail, about 120 pounds . . . ." Because of the patient's small size, Javorsky and one other nurse's assistant performed a total body lift to move her from her bed to a chair. Javorsky testified before a deputy commissioner that as soon as she put the patient in the chair, "[she] felt something immediately . . . . [l]ike possibly pulled muscles" along her neck and right shoulder. Javorsky continued to work but, later in the day, felt a burning sensation in her neck. After her shift, Javorsky went home. When she reached for something on a top shelf in her kitchen, she felt pain like "a sharp knife in [her] neck." Javorsky had previously pulled a muscle in the same area, and after taking muscle relaxers and Ibuprofen, the pain had gone away. For her current pain, she followed the same course of treatment. On 21 June, Javorsky returned to work as scheduled. However, the pain in her neck was still present and had gotten progressively worse. On the morning of 25 June 2007, Javorsky reported the injury to Employee Health and filed a Report of Employee Occupational Injury or Illness. She was placed on restrictive duty and referred to Dr. Alan A. Tamadon, a physiatrist. In the interim, Javorsky began to experience numbness in her right thumb. Dr. Tamadon ordered that she undergo an MRI and referred her to Coastal Neurosurgical. Javorsky was seen on 18 September 2007.

Physician's assistant Christopher Steyskal (Steyskal) performed a complete examination of Javorsky and found the results consistent with her complaint of neck and right shoulder pain occurring while transferring a patient from a bed to a chair. Steyskal reported Javorsky as suffering from "a small disc herniation . . . at C4-5 with some left-sided severe compromise." "At C5-6 there was a large paracentral to the right disc herniation filling the foramen on the right. There was also some foraminal narrowing on the left at [the level of C5-6]." Steyskal testified that a disc herniation at C5-6 was

compressing the C6 nerve root, which resulted in symptoms that radiated down her arm into her hand. Javorsky was given the option of fusing the vertebra in her neck at two levels, C4-C5 and C5-C6, or receiving shots and physical therapy. Steyskal also informed Javorsky of a procedure called "micro endoscopic diskectomy" (MED), performed by Dr. Timothy Adamson, a neurosurgeon practicing in Charlotte. The procedure was less invasive and required less recovery time than a fusion. Thereafter, Dr. Adamson determined that Javorsky was a candidate for the procedure. Javorsky elected the MED.

After the MED, Javorsky testified that she still felt some of the burning sensation in her right shoulder blade, and her neck was weak, but she did not have the pain that she once had. Javorsky returned to work but did not perform total lifts anymore. She was afraid to do too much.

On 17 August 2007, New Hanover Regional filed a Form 19, Employer's Report of Employee's Injury or Occupational Disease to the Industrial Commission. On 19 September 2007, Javorsky spoke with New Hanover Regional adjuster Sheri Teeter via phone. Teeter asked Javorsky how she was injured and investigated the claim by reviewing the Form 19 accident report and medical records. A week later, Teeter asked that Javorsky make a recorded statement. Javorsky refused. On 26 September 2007, Javorsky filed a Form 18, Notice of Accident to Employer. On 28 September 2007, New Hanover Regional filed a Form 61, Denial of Workers' Compensation Claim, and indicated that Javorsky had not described a specific traumatic incident or an injury by accident, had not experienced pain while performing her job, and had refused to give a recorded statement. Javorsky filed a Form 33, Request that Claim be Assigned for Hearing.

On 28 March 2008, the matter came before Deputy Commissioner Kim Ledford. On 4 June 2009, the Deputy Commissioner filed an Opinion and Award ordering that New Hanover Regional pay for all reasonably necessary medical treatment provided for Javorsky's neck injury occurring on 18 June 2007, including treatment rendered and recommended by Dr. Adamson and Coastal Neurosurgery. Dr. Adamson and Coastal Neurosurgery were appointed as authorized treating physicians. Javorsky was granted temporary total disability benefits for the period 22 October 2007 through 11 November 2007, and Javorsky's attorney fees were to be deducted from the sum paid. Javorsky and New Hanover Regional appealed to the Full Commission (the Commission).

The Commission heard the matter on 16 November 2009 and, in an Opinion and Award entered 13 January 2010, adopted, in large part, the Opinion and Award of the Deputy Commissioner but also ordered New Hanover Regional to pay for medical treatment necessary for Javorsky's left shoulder and to pay her attorney a fee of $3,700.00. New Hanover Regional appeals.

On appeal, New Hanover Regional presents the following issues: Did the Commission err in concluding that, as a consequence of her neck injury, (I) New Hanover Regional shall pay for medical treatment for Javorsky's left shoulder; and (II) medical treatment from two physicians located more than 200 miles apart is reasonable or necessary. Did the Commission err in (III) making findings of fact as to the current status of individuals involved in the matter and (IV) awarding Javorsky attorney fees.

### Standard of Review

"Under the Workers' Compensation Act, '[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.'" *Richardson v. Maxim Healthcare/Allegis Group*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). "[Our Supreme] Court has explained that the Commission's findings of fact 'are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary.'" *Hassell v. Onslow County Bd. of Educ.*, 362 N.C. 299, 305, 661 S.E.2d 709, 714 (2008) (citation omitted). "This Court's standard for reviewing an appeal from the full Commission is limited to determining 'whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.'" *Rhodes v. Price Bros., Inc.*, 175 N.C. App. 219, 220, 622 S.E.2d 710, 712 (2005) (quoting *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000)).

### I

[1] New Hanover Regional argues that the Commission erred in finding and concluding that as a result of Javorsky's neck injury she required medical treatment for her left shoulder and that the hospital was financially responsible. We disagree.

In cases involving "complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an

expert can give competent opinion evidence as to the cause of the injury." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980)). . . . The evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation." *Gilmore v. Hoke Cty. Bd. of Educ.*, 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942) (discussing the standard for compensability when a work-related accident results in death).

*Holley v. ACTS, Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003).

Here, the Commission made the following conclusion.

2. As a consequence of her neck injury, [Javorsky] needed medical treatment, including the treatment and surgery performed by Dr. Adamson, as well as treatment for her left shoulder, and [New Hanover Regional is] responsible for the same.

The Commission also made the following pertinent findings of fact.

21. Dr. Adamson testified to his opinion to a reasonable degree of medical certainty more probably than not that the June 18, 2007 lifting event and the C5-C6 disc herniation were causally linked. He also testified that the fact that [Javorsky] had no neck pain reported in a November 2006 visit to Employee Health provided even more evidence to support his opinion, as did the fact that he did not visualize any calcification or spur formation at C5-C6, which means that the herniation was a fairly recent process. This also correlated with her complaints, his physical findings and his objective findings on the MRI, and these findings all reaffirmed each other.

. . .

27. In regard to [Javorsky's] left shoulder pain, Dr. Adamson testified that [Javorsky's] history on the onset of pain in her left shoulder correlated with her work related C5-C6 disc herniations. Thus, the Full Commission finds that the evidence supports a causal connection between the specific incident of June 18, 2007 and [Javorsky's] left-sided pain.

In his deposition, Dr. Timothy Adamson gave the following testimony:

A.   . . . The description [Javorsky] has filled in graphically drawing onto the—the little caricature of a body shows that she had the pins and needles and burning sensations down from the top of the right shoulder down into the right hand and out the thumb.

Q.   And how about that little X that she has there by the left shoulder blade? Did she discuss that at all with you?

A.   No, but that's an incredibly common site for pain to show up in anybody who is having a cervical disc problem.

Q.   And why is that?

A.   It's a—It's a referred pain site. It's kind of like why people with heart attacks will have left arm pain or gallbladder attacks will have right shoulder pain. It's just—It's the inside edge of the shoulder blade below the affected compressed nerve and it's probably present 80 percent of the time.

Q.   And so based on that being your experience with the prevalence being about 80 percent in patients that have the referred pain down the arm what is your opinion as to whether or not to a reasonable degree of medical certainty more probably than not that is related to the disc herniation that you observed at C5-6?

A.   I believe it is related to that.

We hold that Dr. Adamson's medical testimony, that Javorsky's left shoulder pain is causally related to her compensable neck injury, takes the case out of the realm of conjecture and remote possibility and provides sufficient, competent evidence of a proximate causal relation to support the Commission's findings of fact and subsequent conclusion of law. Accordingly, New Hanover Regional's argument is overruled.

*II*

[2] Next, New Hanover Regional argues that the Commission erred in appointing Dr. Adamson and Coastal Neurosurgery as Javorsky's authorized treating physicians. New Hanover Regional argues that because the physicians are located 200 miles apart and New Hanover Regional is responsible for travel expenses and lodging, along with treatment, such an appointment is an abuse of discretion. We disagree.

## JAVORSKY v. NEW HANOVER REG'L MED. CTR.

[208 N.C. App. 644 (2010)]

Our Supreme Court has stated that "an injured employee has the right to procure, even in the absence of an emergency, a physician of [her] own choosing, subject to the approval of the Commission." *Deskins v. Ithaca Indus., Inc.*, 131 N.C. App. 826, 831, 509 S.E.2d 232, 235 (1998) (citing *Schofield v. Tea Co.*, 299 N.C. 582, 264 S.E.2d 56 (1980)). "[T]he approval of a physician . . . lies within the discretion of the Commission." *Franklin v. Broyhill Furniture Indus.*, 123 N.C. App. 200, 207, 472 S.E.2d 382, 387 (1996); *see also* N.C. Gen. Stat. § 97-25 (2009) ("an injured employee may select a physician of his own choosing to attend, prescribe and assume the care and charge of his case, subject to the approval of the Industrial Commission.").[1] "An abuse of discretion results only where a decision is manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision." *Goforth v. K-Mart Corp.*, 167 N.C. App. 618, 624, 605 S.E.2d 709, 713 (2004) (citations omitted).

Here, the Commission made the following conclusion:

2. As a consequence of her neck injury, [Javorsky] needed medical treatment, including the treatment and surgery performed by Dr. Adamson, as well as treatment for her left shoulder, and [New Hanover Regional is] responsible for payment of the same.

In its award, the Commission stated

1. [New Hanover Regional] shall pay for all reasonably necessary medical treatment provided for [Javorsky's] neck injury of June 18, 2007, including the treatment rendered today by Dr. Adamson and Coastal Neurosurgery, and additional cost including [Javorsky's] lodging and mileage for her surgery. . . .

2. [New Hanover Regional] shall pay for any treatment recommended by Dr. Adamson, to include a return visit to Dr. Adamson, and further treatment recommended by Coastal Neurosurgery . . . .

. . .

---

1. New Hanover Regional specifically cites *Little v. Penn Ventilator Co.*, 317 N.C. 206, 345 S.E.2d 204 (1986), for the proposition that N.C.G.S. § 97-25 "requires defendants to pay for future medical treatment as long as they [the treatments] are reasonably required to (1) effect a cure or (2) give relief." However, we note that this language from a former version of § 97-25 was deleted by our legislature in a 1991 amendment of the statute. *See Franklin*, 123 N.C. App. at 207, 472 S.E.2d at 387.

5.   Coastal Neurosurgery and Dr. Adamson are hereby appointed as [Javorsky's] authorized treating physicians.

We note that the Commission made several unchallenged findings of fact which support its conclusion of law number 2 and subsequent award.

12.  [Javorsky] saw Physician's Assistant Christopher Steyskal at Coastal Neurosurgical on September 18, 2007, and he recommended an anterior cervical discectomy and fusion at C4-C5 and C5-C6. P.A. Steyskal later opined that the microendoscopic discectomy ("MED") at C5-C6 was a reasonable option versus the more invasive procedure he had recommended.

. . .

18.  Dr. Adamson determined that [Javorsky] was a candidate for less invasive surgery through her history, a physical examination and his review of her imaging studies. . . .

. . .

24.  The surgery performed by Dr. Adamson was helpful to [Javorsky] in relieving pain.

Given that Dr. Adamson performed the MED on Javorsky, but is located approximately 200 miles away from Javorsky's more immediate medical care provider, Coastal Neurosurgery, and acknowledging the practical considerations of making follow-up medical visits to review Javorsky's progress, we hold the Commission did not abuse its discretion in ordering New Hanover Regional to pay for Javorsky's reasonable medical treatment as well as attendant travel expenses. Accordingly, New Hanover Regional's argument is overruled.

*III*

[3] Next, New Hanover Regional argues that the Commission erred in making findings of fact regarding the current status of Javorsky and Susan Ramsey despite a lack of new evidence before the Commission and a record that had not changed since the matter was heard before a deputy commissioner.

New Hanover Regional argues that there is no competent evidence to support the Commission's finding that "Susan Ramsey . . . is currently the patient safety manager for [New Hanover Regional]" and that "[Javorsky] continues to experience weakness in her neck at

times and left shoulder blade pain . . . ." However, as these findings were based on competent evidence received as of the date of the hearing, New Hanover Regional fails to show error or prejudice from these findings of fact. Accordingly, this argument is overruled.

*IV*

**[4]** Last, New Hanover Regional argues that the Commission erred by ordering it to pay attorney fees in the amount of $3,700.00 to Javorsky's attorney, pursuant to N.C. Gen. Stat. § 97-88.1. We disagree.

Under North Carolina General Statutes, section 97-88.1, "[i]f the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." N.C. Gen. Stat. § 97-88.1 (2009).

> The purpose of this section is to prevent "stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees." *Beam v. Floyd's Creek Baptist Church*, 99 N.C. App. 767, 768, 394 S.E.2d 191, 192 (1990) (citations omitted). In such cases, the Commission is empowered to award the whole cost of the proceedings including [reasonable attorney's fees].

*Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 54, 464 S.E.2d 481, 485 (1995). "The decision of whether to make such an award, and the amount of the award, is in the discretion of the Commission, and its award or denial of an award will not be disturbed absent an abuse of discretion." *Id.* at 54-55, 464 S.E.2d at 486 (citing *Taylor v. J.P. Stevens Co.*, 307 N.C. 392, 394, 298 S.E.2d 681, 683 (1983); N.C. Gen. Stat. § 97-90 (1991)).

New Hanover Regional denied Javorsky's claim that her injury sustained 18 June 2007 was compensable. The Commission found that the New Hanover Regional adjuster's investigation of Javorsky's claim was comprised of reviewing the Form 19 accident report and medical records; however, she failed to interview the witness listed on the accident report. In denying her claim, New Hanover Regional indicated that Javorsky "had not described a specific traumatic incident or an injury by accident, that she did not experience pain while performing her job duties and that she had refused to give a recorded statement. [New Hanover Regional] also took the position that [Javorsky] had not timely reported her injury." With the exception of

Javorsky's refusal to give a recorded statement, there was competent evidence before the Deputy Commissioner and the Full Commission that even after plaintiff reported her injury by accident and even after medical experts testified that her injuries were causally related to the work place injury, New Hanover Regional continued to deny the claim as compensable. We believe such actions are inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees and such actions evidence stubborn, unfounded litigiousness. Therefore, we hold that the Commission did not abuse its discretion in awarding Javorsky $3,700.00 under N.C. Gen. Stat. § 97-88.1, and accordingly, New Hanover Regional's argument is overruled.

Affirmed.

Judges STEELMAN and HUNTER, Robert N., Jr., concur.