***********
The Full Commission has reviewed the Deputy Commissioner's Order based on the record of the proceedings before the Deputy Commissioner and the Commission file concerning the Form 24 application. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Order with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the deputy commissioner hearing as
 STIPULATIONS
1. An employer-employee relationship existed at all relevant times.
2. Liberty Mutual Insurance insured United Parcel Service for workers' compensation at all relevant times.
3. The parties are subject to the North Carolina Workers' Compensation Act, the employer employing the requisite number of employees to be bound under the provisions of the Act.
4. Plaintiff, Tony C. Richardson, was injured in the course of employment on November 7, 1997 and was receiving temporary total disability benefits.
5. The parties stipulated into evidence as Stipulated Exhibit 1, without need for further authentication or verification, a packet of plaintiff's medical records.
6. The parties stipulated into evidence as Stipulated Exhibit 2, a Form 60, Employer's Admission of Employee's Right to Compensation, dated November 20, 1997, indicating that plaintiff suffered a compensable injury by accident on November 7, 1997, earned an average weekly wage of $798.00 and was entitled to temporary total disability compensation at the rate of $512.00 per week.
 ***********
Based upon the competent evidence, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing, plaintiff was a 39-year-old male, born December 12, 1960. Plaintiff had graduated from high school and attended two years of college at North Carolina Central University. Plaintiff had a history of working at McDonald's, at a temporary service, and then became a UPS driver part-time. Plaintiff spent three and one half years as a part-time loader and thereafter spent seventeen years as a UPS driver.
2. On June 14, 1996, plaintiff suffered an injury at work and was eventually seen by Dr. Garner.
3. On June 30, 1996, Dr. Garner, a board-certified neurosurgeon, performed a microdiskectomy at L5-S1 on the left. Following plaintiff's surgery, plaintiff underwent physical therapy and on October 25, 1996 was released to full time light duty at 20 pounds or less.
Dr. Garner determined plaintiff was at maximum medical improvement on January 22, 1997 and was of the opinion that plaintiff retained a 5% permanent partial impairment of the spine due to his June 14, 1996 injury. Dr. Garner returned plaintiff to work on February 1, 1997; plaintiff was to work eight-hour days for two weeks and then the hours of his employment were not limited.
4. On November 7, 1997, plaintiff sustained a compensable specific traumatic incident of the work assigned when as he lifted a 198-pound package, he reinjured his back at the site of the previous injury. The November 7, 1997 injury is the subject of this action.
5. Plaintiff saw Dr. Garner on December 4, 1997, presenting with a recurrent ruptured disc at L5-S1 on the left side. Plaintiff underwent a second surgery for that condition performed by Dr. Garner on March 3, 1998.
6. By April 20, 1998, Dr. Garner was of the opinion that plaintiff was again at maximum medical improvement and as a result of this second surgery retains an additional 5% permanent partial impairment of the spine for a total of 10%.
7. Following physical therapy, plaintiff underwent a functional capacity evaluation requested by Dr. Garner. That evaluation indicated that plaintiff was able to lift 50 pounds at a maximum. In June 1998, Dr. Garner released plaintiff to return to work based on the limitations found in the FCE. Plaintiff was not able to return to work for defendant-employer because the 50-pound lifting restriction was below the requirements for plaintiff's job. Plaintiff continued to receive temporary total disability compensation and has remained out of work.
8. After plaintiff continued to experience pain, plaintiff was referred by Dr. Garner, his authorized treating physician, to Dr. William Lestini to explore the possibility of spinal fusion. Dr. Garner chose Dr. Lestini because he believed plaintiff may be a candidate for fusion surgery from the front (anterior), as it is a minimally invasive technique; Dr. Lestini does most of the anterior fusion surgeries performed in Raleigh; and, in Dr. Garner's opinion, Dr. Lestini has the best success rate.
9. On May 6, 1999, plaintiff presented to Dr. Lestini and was evaluated. At that time Dr. Lestini was of the opinion that plaintiff should undergo discography to determine whether or not his recurrent herniated disc and degenerative disc disease at L5-S1 with degenerative disc disease and an annular tear at L4-5 were symptomatic in causing plaintiff's discomfort or were asymptomatic. Dr. Lestini was of the opinion that this test should be undergone preoperatively so that plaintiff could discuss his operative and non-operative treatment options.
10. Dr. Lestini was of the opinion that plaintiff, if he elected to pursue a surgical option, would be a good candidate for a surgical fusion, which could either be performed anteriorly or posteriorly. Dr. Lestini was of the opinion that to avoid an extensive posterior reconstruction he would perform the anterior minimally invasive, inter body fusion with BAK cages. Dr. Lestini was also of the opinion that if plaintiff could tolerate his symptoms, he could consider a non-operative treatment plan which would maximize his physical therapy efforts to therapeutically strengthen his spine and restart plaintiff into a therapeutic exercise regime returning him to functional capacity in a lighter work situation.
11. Plaintiff was notified by defendants that a discogram had been scheduled for him on September 20, 1999 with Dr. Lestini. Plaintiff did not attend the discogram.
12. Plaintiff has expressed concerned over Dr. Lestini because he was referred there by Dr. Garner, his approved treating physician. Plaintiff did not have an unpleasant experience with Dr. Lestini and does not question his qualifications, but does not trust Dr. Lestini because he is in the same building with Dr. Garner and was selected by Dr. Garner. Plaintiff was not happy with Dr. Garner because plaintiff felt that Dr. Garner released him to work when he was not physically able to work and when he was a surgical candidate.
13. Plaintiff requested a second opinion from Dr. Paul Suh, a board-certified orthopedic surgeon, which was approved. After obtaining an extensive history and performing an evaluation, Dr. Suh was of the opinion that plaintiff needed further diagnostic testing. Dr. Suh was of the opinion that further testing would determine whether or not plaintiff needed further surgery. He was further of the opinion that a posterior fusion is a preferable procedure in general because there are fewer complications and better pain relief.
14. Dr. Suh's recommendation of further tests included a lumbar myelogram and CT scan and lumbar discogram and CT scan to determine plaintiff's source of pain and whether surgery was necessary. These are almost the exact tests which Dr. Lestini sought to perform and for the same stated reason.
15. Defendants have made it clear to plaintiff that it is his option whether to choose operative or non-operative care and that they would provide either. Plaintiff has not been denied any treatment recommended by an authorized treating physician and continues to receive temporary total disability compensation.
16. Plaintiff's treatment with Dr. Garner and Dr. Lestini has been sufficient and reasonable. The treatment recommended and offered by Dr. Lestini, who has a good reputation and has performed many fusions, is reasonable.
17. On January 30, 2001, Deputy Commissioner Taylor filed an Opinion and Award denying plaintiff's request to change treating physicians to Dr. Suh and affirming that plaintiff's treatment will be performed by Dr. Gardner and Dr. Lestini. Neither party has appealed from this decision.
18. On July 27, 2000, the same day as the deputy commissioner hearing in this action, the plaintiff and defendant had a Form 24 hearing before Special Deputy Commissioner Gina E. Cammarano on defendants' motion to suspend indemnity benefits because plaintiff had failed to attend the discogram recommended by Dr. Lestini and scheduled for September 20, 1999. Defendants contend that they should not be liable for continuing temporary total disability payments while plaintiff is using procedural tactics to delay medical treatment and his recovery. On August 3, 2000, Special Deputy Commissioner Gina E. Cammarano filed an order denying defendant's motion to suspend benefits which stated:
 "Plaintiff sustained an admittedly compensable work-related injury on 7 November 1997. Defendants filed this Form 24 Application alleging that plaintiff unjustifiably refused to comply with medical treatment in violation of an Order of the Industrial Commission by failing to undergo a discogram, as recommended by Dr. Lestini, and by failing to follow-up with Dr. Lestini after the denial of his motion to transfer care from Dr. Lestini to Dr. Suh. Plaintiff objected to defendants' Form 24 Application.
 The documentation submitted by the defendants showed that on 8 January 1999 Special Deputy Commissioner James Gillen entered an Order compelling plaintiff to comply with medical treatment pursuant to N.C. Gen. Stat. § 97-25. The documentation also showed that plaintiff was scheduled to undergo a discogram at Dr. Lestini's request on 20 September 1999 but that plaintiff failed to attend the appointment.
 According to plaintiff, he was reluctant to undergo the discogram at Dr. Lestini's request because he did not want Dr. Lestini to perform surgery on him and believed that if he underwent the discogram at Dr. Lestini's request, then he would be required to undergo surgery by Dr. Lestini. Additionally, as of 20 September 1999, the date of the scheduled discogram, plaintiff's motion to transfer care from Dr. Lestini to Dr. Suh had not yet been ruled upon. Accordingly, it appears that plaintiff's failure to undergo the discogram on 20 September 1999 was justified.
 Moreover, the information in the Commission's file showed that plaintiff filed a timely appeal of the denial of his motion to transfer care from Dr. Lestini to Dr. Suh. Accordingly, it appears that plaintiff was justified in failing to follow-up with Dr. Lestini during the pendentcy of this appeal.
 Under the particular circumstances of this case, it appears that plaintiff was justified in his refusal to undergo a discogram at Dr. Lestini's request and justified in his refusal to follow-up with Dr. Lestini to date. Accordingly, defendants are not entitled to suspend plaintiff's ongoing temporary total disability compensation on the grounds cited at this time."
Defendants on February 19, 2001, filed a letter motion requesting Deputy Commissioner Taylor to effectively join the issue from the Form 24 hearing to suspend benefits and to order that defendants can suspend benefits and receive a credit for benefits paid after September 20, 1999, when plaintiff failed to have the discogram recommended by Dr. Lestini. On March 20, 2001, Deputy Commissioner Taylor entered an Order denying defendants requested relief because "plaintiff was seeking to have his treating physician changed by the Industrial Commission and defendants have repeatedly stated that plaintiff may either have surgery or elect not to do so."
19. The Full Commission also notes that an Order was entered by Special Deputy Commissioner James Gillen on January 8, 1999, which stated:
 "Defendants filed a Form 24 application alleging that plaintiff has failed to comply with medical treatment and/or vocational rehabilitation. There is no prior Industrial Commission order to comply in the Commission's file. Defendants have not, therefore, raised sufficient grounds to justify a suspension of plaintiff's compensation at this time.
 IT IS HEREBY ORDERED that plaintiff shall comply with medical or other treatment or rehabilitative procedures as required by N.C. Gen. Stat. § 97-25. Temporary total disability compensation shall continue until plaintiff returns to work or until further order by the Industrial Commission."
20. The greater weight of the competent evidence supports the findings made by Special Deputy Commissioner Cammarano and Deputy Commissioner Taylor that plaintiff was entitled to file his motion to change treating physicians and that, under the circumstances of this case, plaintiff was justified in refusing treatment at the request of Dr. Lestini until his motion to change his treatment to Dr. Suh was determined. The Full Commission finds that plaintiff had lost confidence in Dr. Garner, and was not certain about Dr. Lestini because he was chosen by Dr. Garner, and was justified in filing his request to change treating physicians although the Deputy Commissioner ultimately ruled that Dr. Garner and Dr. Lestini would remain his treating physicians. The Full Commission further finds that defendants had not obtained an order specifically directing plaintiff to attend and receive the discogram prescribed by Dr. Lestini. The discogram was not recommended at the time of the January 8, 1999 Order entered by Special Deputy Commissioner Gillen and that Order does not require plaintiff to submit to specific medical care. Section 97-25 also permits the employee to request a change in his treating physician. Therefore, the Full Commission finds that plaintiff has not failed to comply with Section 97-25 of the Act.
21. The Full Commission finds that defendants have not provided the Full Commission with an Order, or other evidence, enabling defendants to suspend benefits pursuant to Section 97-25 and that defendants' appeal to the Full Commission was prosecuted without reasonable ground. The Full Commission finds that plaintiff shall recover $1,000.00 for reasonable attorney's fees and expenses in this action, which shall be paid to his counsel and credited to fees and expenses owed to counsel by plaintiff.
 ***********
The foregoing stipulations and findings of fact engender the following additional
 CONCLUSIONS OF LAW
1. Deputy Commissioner Taylor did not err in denying defendants motion to reconsider. The standard procedure for appealing from a Form 24 decision from the Executive Secretary's Office of the Industrial Commission is for the aggrieved party to file a Form 33 to request a hearing on the issue from a deputy commissioner. In the circumstance of this case, defendants asked Deputy Commissioner Taylor to waive the standard procedure because the evidence defendants believed was necessary to rule on the Form 24 suspension of benefits issue was currently before Deputy Commissioner Taylor on the hearing concerning plaintiff's request to change physicians. Under the circumstances of this case, Deputy Commissioner Taylor had the discretion to accept jurisdiction over the suspension of benefits issue or to require the parties to file a Form 33 to request a hearing before a deputy commissioner upon receipt of the special deputy commissioner's order on the Form 24 motion. Deputy Commissioner Taylor did not abuse this discretion when she declined to order the suspension of benefits in this case.
2. Further, defendants are not entitled to suspend benefits in this case under Section 97-25 of the Act. This action concerns the balancing of two separate rights allowed under Section 97-25. First, Section 97-25
states that the "Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee." Second, Section 97-25 provides that the "refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the Industrial Commission shall bar said employee from further compensation until such refusal ceases . . ." On the first issue — change of treating physician — the Commission has broad discretion to approve or deny the employee's request to change the physician. Franklin v.Broyhill, 123 N.C. App. 200, 472 S.E.2d 382 (1996). No party has appealed to the Full Commission the deputy's January 30, 2001 Opinion and Award denying plaintiff's request to change his treatment to Dr. Suh; therefore, the Full Commission declines to reevaluate the deputy's January 30, 2001 Opinion and Award. See Bryant v. Weyerhaeuser Co.,130 N.C. App. 135, 502 S.E.2d 58 (1998) (Full Commission could not relitigate issue from prior deputy commissioner order that was not appealed). The second issue — whether defendants can suspend benefits — presents two questions which are intertwined with the first issue; these questions are: (1) whether plaintiff was entitled to refuse treatment by Dr. Lestini while seeking to change his treatment to Dr. Suh; and (2) whether plaintiff violated an order compelling plaintiff to receive treatment. As stated above, plaintiff is expressly entitled under Section 97-25 to request a change in his treating physician. Under the specific facts of this case, plaintiff was justified, legally and factually, in requesting the change in treating physician to Dr. Suh although the Commission ultimately denied this request. On the second question, the Commission notes that the January 8, 1999, Order entered by Special Deputy Commissioner Gillen required plaintiff to comply "with medical or other treatment or rehabilitative procedures as required by N.C. Gen. Stat. § 97-25." Section 97-25 includes the employee's right to seek a change in treating physician, therefore, in answering the second question in this case, the Commission has to balance the plaintiff's request to change treating doctor with his obligation to comply with the order of the deputy commissioner. Although Special Deputy Commissioner Gillen's January 8, 1999 Order would normally require plaintiff to comply with the medical treatment prescribed by his physicians, plaintiff's request to change treatment physicians is also in accordance with Section 97-25, and therefore plaintiff's delay in treatment pending his Section 97-25 request to change physicians does not directly violate the Special Deputy's Order under the particular circumstances of this case. Although the Commission can envision circumstances where there may be a conflict between plaintiff's right to seek a change in treating physicians and the defendants' right to compel plaintiff to comply with an order for particular treatment, that circumstance is not present in this case. In this case, plaintiff was legally justified to request a change in treating physicians and defendants did not seek an order to specifically compel the discogram and did not have an order compelling plaintiff to cooperate with specific treatment. Further, the Commission has not found that plaintiff filed the motion to change treating physicians in order to extend the period for which he would be entitled to benefits. In addition, defendants were not requiring plaintiff to have surgery; defendant had made it clear to plaintiff that he could elect to choose operative or non-operative care. Therefore, the Full Commission declines to find that plaintiff failed to comply with the January 8, 1999 Order when he requested the change in his treating physician and sought a hearing on this issue.
3. Defendants have prosecuted this appeal without a reasonable basis. N.C.G.S. § 97-88.1.
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following
 AWARD
1. Defendant's request to suspend benefits pursuant to Section 97-25 is DENIED.
2. Defendant's shall pay $1,000.00 to plaintiff's counsel pursuant to Section 97-88.1.
3. Defendants shall pay all costs.
 S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________________________ BUCK LATTIMORE COMMISSIONER