***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Ledford.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. On January 7, 2002, the date of injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to mis-joinder or non-joinder of parties.
3. Federated Mutual Insurance Company was the carrier on the risk for defendant-employer on the date of injury.
4. The plaintiff was involved in an accident at work on January 7, 2002, when a falling number sign struck plaintiff on the left side of her face. Plaintiff filed a workers' compensation claim, and defendants accepted the compensability of the injury to plaintiff's face and jaw via Form 60 dated September 13, 2002. The parties disagree on the extent of plaintiff's injuries and whether any carpal tunnel syndrome that plaintiff may have is related to her accident on January 7, 2002.
5. At the time of the accident, plaintiff earned an average weekly wage of $270.00, thus yielding a compensation rate of $180.00.
6. At the hearing before the Deputy Commissioner, the parties stipulated the following exhibits into evidence:
a. Stipulated Exhibit 1: Industrial Commission forms and Defendants' Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents; and
b. Stipulated Exhibit 2: Medical records.
 ***********
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 54 years of age. She completed the eleventh grade of high school.
2. Plaintiff was hired by defendant-employer to work as a cashier, but also had stocking responsibilities throughout the store. Plaintiff testified that she spent the majority of her shift operating the cash register but would also be required to restock the beer, sodas and cigarette cases.
3. On January 7, 2002, plaintiff was working at the cash register when her supervisor asked her to go outside and change the gasoline prices on the sign. Plaintiff had never done this before. The sign was approximately 30 feet off the ground, and she had to use an extension pole with a suction cup. While changing the numbers, two of the numbers fell off, and at least one number struck plaintiff's face as it was falling to the ground. When plaintiff put her hands to her face, she found that she was bleeding. Plaintiff did not seek medical treatment until after her shift ended.
4. After work, plaintiff went to Shallotte Urgent Care, where she presented to Dr. Timothy Smith, an osteopathic physician. She complained of jaw pain and slight neck pain. X-rays were taken of her jaw and left temporo-mandibular joint area. Dr. Smith diagnosed contusions to plaintiff's face, and told her to return for re-evaluation on January 9, 2002. Dr. Smith wrote plaintiff a note excusing her from work through January 10, 2002.
5. On January 9, 2002, plaintiff returned to Shallotte Urgent Care. Dr. Smith noted that she had palpable tenderness on the left side of her jaw and swelling of the mandible and kept plaintiff out of work for another week.
6. On March 27, 2002, Dr. Richard Leighton, an osteopathic physician, examined plaintiff for complaints of left shoulder pain. Plaintiff reported that her shoulder had been bothering her intermittently since October of 2001, but the pain had worsened since the falling sign had struck her. Plaintiff also reported that she had been experiencing tingling in her right hand, which had been present for approximately one year. Plaintiff had previously experienced nocturnal awakening due to both left shoulder and right hand pain. Dr. Leighton assessed left shoulder impingement syndrome, cervical spine degenerative disc disease, levator scapula syndrome and possible carpal tunnel syndrome.
7. On June 14, 2002, plaintiff was examined by Dr. Henry Lepore, a physical medicine and rehabilitation specialist with Southeastern Rehab. Dr. Lepore diagnosed plaintiff with complex regional pain syndrome, which was previously called reflex sympathetic dystrophy or RSD, consistent with shoulder/hand syndrome on the left, probable left carpal tunnel syndrome, muscle weakness on the left, and loss of range of motion of her hand and shoulder. On June 24, 2002, plaintiff was referred for nerve conduction and EMG studies which were performed on July 2, 2002. The nerve conduction studies were normal, and the EMG studies were normal with no evidence of focal neuropathy at her wrists or of a cervical radiculopathy.
8. On August 6, 2002, plaintiff was diagnosed with rotator cuff syndrome and a possible supraspinatous tear. She was referred for an MRI of her left shoulder. On August 16, 2002, the MRI revealed moderate arthropathy and an inferior down-sloping acromion, which may have predisposed plaintiff to impingement syndrome. She was also diagnosed with minor rotator cuff tendinopathy. Dr. Lepore's examination focused on plaintiff's left arm and shoulder and he did not assess any complaints regarding her right hand.
9. Dr. Lepore prescribed physical therapy, as well as a TENS unit. He also treated plaintiff with medication and stellate ganglion block injections. Dr. Lepore wrote a note excusing plaintiff from work from August 21, 2002, until further notice.
10. Although plaintiff had been treating for left shoulder pain, her physicians had not placed any restrictions on her use of her left arm until August 2002, eight months after the accident occurred, when Dr. Lepore excused her from work. However, due to pain complaints, plaintiff decided to limit the use of her left arm and began using her right hand and arm for most tasks at work.
11. After the accident on January 7, 2002, plaintiff had missed only a few days from work. She worked through the date of the MRI, and until one week later when Dr. Lepore excused her from work beginning on August 21, 2002. Defendants filed a Form 60 on September 20, 2002, and commenced payment of temporary total disability benefits as of August 21, 2002. Plaintiff has received temporary total disability benefits from that date through the present and continuing.
12. Dr. Lepore last examined plaintiff in March 2003, at which time he did not release her to return to her prior employment.
13. On December 11, 2002, plaintiff presented to Dr. Donald Getz, an orthopedic specialist, for an independent medical examination of her left shoulder. Dr. Getz diagnosed plaintiff with symptomatic acromioclavicular arthritis with impingement syndrome of the left shoulder, which, in his opinion, was causally related to the accident. Dr. Getz noted plaintiff had discontinued treatment and is now so symptomatic that it may be necessary to do a subacromial decompression on her left shoulder.
14. Plaintiff presented for a second independent medical examination performed by Dr. Alan Tamadon of Rehabilitation Medicine Services on February 21, 2003. Dr. Tamadon concluded that either plaintiff's RSD had been appropriately treated such that it had resolved or her current pain was not due to RSD as there was no strong evidence of the diagnosis during the evaluation. Dr. Tamadon found no indications of carpal tunnel syndrome on the left, and indicated he was not sure whether the right side was related to her accident, since it was not involved.
15. On March 23, 2003, plaintiff had a functional capacity evaluation ("FCE"). The evaluator's conclusion was that she demonstrated sub-maximal effort throughout the FCE and that there were clear signs of symptom magnification.
16. On May 5, 2003, plaintiff presented for a second opinion evaluation by Dr. David Esposito, an orthopedic surgeon. Dr. Esposito noted that plaintiff had been treated for RSD of her left upper extremity, and that the condition had resolved. He assessed her with left shoulder impingement and bicipital tendinitis. Dr. Esposito noted that if her symptoms persisted, surgery might be necessary.
17. On July 1, 2003, Dr. Esposito performed the following surgical procedures: (1) right shoulder extensive debridement; (2) arthroscopic synovectomy; (3) subacromial decompression; (4) distal clavicle resection; (5) insertion of a Breg pain pump; (6) right carpal tunnel release; and (7) right fourth trigger finger release. Dr. Esposito followed plaintiff's progress after surgery as she underwent physical therapy and took anti-inflammatory medication.
18. Defendants had earlier assigned Greg Henderson of VocMed, Inc. to provide vocational rehabilitation services to plaintiff. On January 8, 2004, Mr. Henderson forwarded to Dr. Esposito a job description for the position of sales associate/cashier with defendant-employer, which was the same job plaintiff held at the time of the accident.
19. On January 12, 2004, Dr. Esposito referred plaintiff for a second FCE to determine her work capabilities. The FCE was performed on January 27, 2004, and it revealed that plaintiff was capable of performing physical work at a light level for an eight-hour day.
20. After the FCE was performed, plaintiff had a follow-up visit with Dr. Esposito on February 17, 2004. At that time, Dr. Esposito reviewed the results of her FCE and the job description provided by Mr. Henderson. He opined that plaintiff had reached maximum medical improvement and that she sustained a 12% permanent partial disability rating to her left arm. Dr. Esposito went on to say the following: "I reviewed a job description and if, indeed, it is consistent with her permanent limitations as per FCE, then I see no problem with her going back to this job, specifically as cashier as described in the correspondence from Greg Henderson." Dr. Esposito also sent a letter to Mr. Henderson dated February 17, 2004, in which he reiterated his opinion that plaintiff could return to her job as a cashier.
21. Once defendants received Dr. Esposito's opinion, Jill Johnson, the Safety Director for the defendant-employer sent a letter to plaintiff dated March 1, 2004. In the letter, Ms. Johnson offered plaintiff a job as a cashier in a full-time capacity earning $6.75 per hour, her pre-injury wage. Ms. Johnson also notified plaintiff that she would be provided a step stool to use when retrieving cigarettes for customers (which was recommended by plaintiff's physical therapist). Plaintiff was informed that she needed to contact Ms. Johnson by March 12, 2004, to advise her if she could begin work on March 17, 2004.
22. On March 10, 2004, plaintiff's counsel sent Mr. Henderson a letter in which she stated that plaintiff would not return to work until the job description for the sales associate/cashier position was reviewed and approved by Dr. Lepore. Plaintiff did not contact Ms. Johnson by March 12, 2004.
23. At the time defendants made the job offer to plaintiff, the case was pending before the Deputy Commissioner. On March 31, 2004, the Deputy Commissioner received the defendants' Form 24, Application to Terminate Plaintiff's Benefits. The Application was based upon plaintiff's refusal to accept the offer to return to work. The Deputy Commissioner deferred ruling until the parties had submitted their evidence. Over the objection of defendants, the record was held open at plaintiff's request to complete the deposition of Dr. Esposito.
24. In weighing the medical evidence, the Full Commission has relied primarily upon the testimony of Dr. Esposito, who is the orthopedic specialist who performed the surgery and most recently evaluated plaintiff. His testimony establishes the causal connection between the accident and her left shoulder injury and the need for the surgery.
25. The greater weight of the evidence fails to establish that plaintiff's claim for right carpal tunnel syndrome is causally related to her accident. Plaintiff has failed to show that she used her right hand so extensively that it caused or aggravated her right hand condition. As Dr. Getz indicated, the mere overuse itself does not cause carpal tunnel syndrome. Plaintiff has failed to show that her employment placed her at an increased risk to develop carpal tunnel syndrome.
26. As per the testimony of Dr. Esposito, the defendant-employer offered plaintiff employment within her capabilities following her surgical release. Dr. Esposito's assessment of plaintiff was that she was at maximum medical improvement and that she could return to her job as a cashier. The Full Commission gives greater weight to Dr. Esposito's opinions as he performed several surgeries upon the plaintiff, followed plaintiff's progress post surgery and was current with plaintiff's progress. The Full Commission further finds that plaintiff's refusal of the position offered by defendants within her medical job restrictions constituted an unjustified refusal of suitable employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. As a direct result of the work assigned to plaintiff on January 7, 2002, plaintiff sustained an injury by accident arising out of and in the course of her employment, which resulted in injury to her face, neck and left shoulder. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the evidence fails to establish that plaintiff's claim for either left or right carpal tunnel syndrome is related to her compensable injury by accident or that the same is a compensable occupational disease. Where the condition may have been aggravated but not originally caused by the plaintiff's employment, she must still demonstrate that the employment placed her at a greater risk for contracting or developing the condition. "Evidence tending to show that the employment simply aggravated or contributed to the employee's condition goes only to the issue of causation, the third element of the Rutledge test." Plaintiff has not met her burden of proving the carpal tunnel syndrome was caused by her job as a cashier or that the job placed her at increased risk of developing the condition. Futrell v. Resinall Corp.,357 N.C. 158, 579 S.E.2d 269 (2003).
3. The sales associate/cashier job offered to plaintiff by letter dated March 10, 2004, was approved by Dr. Esposito and qualifies as suitable employment within the meaning of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-32 states that "if an injured employee refuses employment procured for [her] suitable to [her] capacity [she] should not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." Plaintiff refused the defendant-employer's offer of suitable employment. Therefore, there was good basis for the defendants' filing of the Form 24 Application to Terminate or Suspend Payment of Compensation, received at the Industrial Commission on March 31, 2004. N.C. Gen. Stat. § 97-32; Franklin v. Broyhill Furn. Indus.,123 N.C. App. 200, 472 S.E.2d 382 (1996).
4. As a direct and proximate result of plaintiff's compensable injuries to her face, neck and left shoulder, plaintiff is entitled to temporary total disability compensation at the rate of $180.00 per week through March 31, 2004, the date of the filing of defendants' Form 24, Application to Terminate or Suspend Payment of Compensation. N.C. Gen. Stat. § 97-29. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved.
5. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to permanent partial disability compensation benefits for 28.8 weeks at a compensation rate of $180.00 per week for the 12% rating to her left arm. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved. N.C. Gen. Stat. §97-31.
6. As a result of plaintiff's compensable injuries by accident, the plaintiff is entitled to have the defendants pay for all medical expenses for treatment of plaintiff's facial, neck and left shoulder injuries sustained in the accident of January 7, 2002, including any treatment, evaluations or surgery by Dr. Esposito for plaintiff's facial, neck and left shoulder injuries only for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
7. Defendants are entitled to a credit for any overpayment of temporary total disability compensation benefits paid after March 31, 2004. This credit shall be allowed to reduce the amount of any permanent partial disability compensation due plaintiff. N.C. Gen. Stat. § 97-42; Evans v. AT T Technologies, 103 N.C. App. 45,404 S.E.2d 183, rev'd on other grounds, 332 N.C. 78,418 S.E.2d 503 (1992).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay compensation to plaintiff for her temporary total disability at the rate of $180.00 per week beginning August 21, 2002, and continuing until March 31, 2004. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved.
2. Subject to a reasonable attorney's fee herein approved, the defendants' shall pay to the plaintiff her permanent partial disability rating benefits for 28.8 weeks at a compensation rate of $180.00 per week for the 12% permanent partial disability rating assigned to her left arm. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved. N.C. Gen. Stat. §97-31.
3. Defendants shall pay for all medical expenses for treatment of plaintiff's facial, neck and left shoulder injuries sustained in the accident of January 7, 2002, including any treatment, evaluation or surgery performed by Dr. Esposito for plaintiff's facial, neck and left shoulder injury only for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability.
4. Defendants' Form 24 Application is GRANTED and defendants may immediately suspend payment of plaintiff's ongoing temporary total disability compensation as of March 31, 2004.
5. Defendants are entitled to a credit for any overpayment of temporary total disability compensation from any permanent partial disability payments due plaintiff.
6. Plaintiff's claim for any indemnity or medical compensation under the North Carolina Workers' Compensation Act for either left or right carpal tunnel syndrome is hereby DENIED.
7. An attorney's fee of 25% of the compensation awarded to plaintiff under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
Defendants shall pay the costs.
This the 8th day of July 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN