***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rideout with modifications.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. It is stipulated that all parties are properly before the Industrial Commission and that the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. It is stipulated that all parties have been correctly designated and that there is no question as to the misjoinder of any parties.
3. The parties stipulate that there was an employee-employer relationship at the time of the alleged injury in question.
4. The parties stipulate and agree that Synergy Coverage Solutions was the carrier on the risk on or about December 12, 2005.
5. The parties will stipulate and agree that the plaintiff's average weekly wage and compensation rate will be determined pursuant to a Form 22 submitted at the hearing of this matter.
6. It is stipulated and agreed that the entire contents of the Industrial Commission file be entered into evidence, specifically including, but not limited to, all completed Industrial Commission forms, without further identification or proof.
7. It is stipulated and agreed that all medical reports and records be entered into evidence without further identification or proof, but provided that each party has the right to take the testimony of any physician who has treated or examined the plaintiff within sixty (60) days after the hearing of this matter or any greater time if so allowed by the Industrial Commission.
 **********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-seven (47) years old. She graduated from high school and went on to college and received a degree qualifying her as a registered nurse. Plaintiff has a vocational history as a LPN and RN.
2. Plaintiff resided in Canada and was recruited to North Carolina to work as a registered nurse. At the time of the hearing before the Deputy, she had lived in Fayetteville, North Carolina for approximately eight years.
3. Plaintiff was first employed with defendant-employer in 2001 as a regular staff nurse. Subsequently, she was promoted to the night supervisor position. She worked for defendant-employer for approximately three years prior to leaving for a period of one year.
4. In September 2005, plaintiff accepted a part-time position with Fayetteville Tech. Plaintiff worked at Fayetteville Tech during the day from 8 a.m. until 2 p.m. Monday through Thursdays. In October 2005, plaintiff returned to the defendant-employer in a part-time position as an RN supervisor. She worked from 11 p.m. to 7 a.m. on Thursday, Friday, and Saturday nights. Plaintiff never worked the day shift.
5. As an RN supervisor, plaintiff's job duties included making sure staff was at work and following company policy, assessing patients, assisting with blood draws, assisting the nurses if required, completing paperwork for staff, assisting family members of patients, communicating with doctors and also taking care of her own assigned patients.
6. On December 12, 2005, plaintiff was working as a regular floor nurse on the fifth hallway. She was completing her last med pass of her shift. One of the patients requested assistance with going to the bathroom. No one else was available as it was the busy time of the morning for the staff; therefore, plaintiff went to assist the patient. While assisting in positioning *Page 4 
the patient, the patient suddenly "popped up" knocking plaintiff backwards into the wall. Plaintiff did not think much of the incident and returned the patient to bed. Plaintiff completed her duties and clocked out for the shift.
7. Once at home, plaintiff ate breakfast and then went to bed. Plaintiff normally sleeps until 1:00 p.m., but due to pain she woke up at 11:00 a.m. Plaintiff took Tylenol for her pain and thought that she would get better.
8. Plaintiff's pain increased in intensity. Therefore, plaintiff decided to see her family physician, Dr. Patel. Plaintiff saw Dr. Patel on December 15, 2005. Plaintiff presented with right sided back pain radiating to the front of her thigh and up to the lower leg for three or four days. Plaintiff was severely weak and unable to walk. Dr. Patel prescribed anti-inflammatory medication and requested that an MRI be performed. Dr. Patel wrote plaintiff out of work through December 29, 2005.
9. Plaintiff took the out of work note and request for MRI to her employer and spoke with Doreen Barry. She told Ms. Barry that she would not be able to work the weekend. Ms. Barry took the notes and informed plaintiff that she would pass on the information. Plaintiff did not tell anyone else what happened as it was early in the morning and Ms. Barry was the only person in the building at the time.
10. Plaintiff returned to Dr. Patel on December 29, 2005. She had continued complaints of low back pain. The MRI revealed degenerative arthritis with a broad based disc bulge with bilateral degenerative facet joint; mild to moderate bilateral neuroforaminal narrowing at L5/S1, L4/L5 and L3. Dr. Patel referred plaintiff to Dr. Parikh, for further care and continued her out of work through January 5, 2006. *Page 5 
11. Plaintiff turned in all of her out of work notes to the defendant-employer and reported the incident to a unit manager by the name of John. At that time, she was advised by John to inform the Director of Nursing what happened. Plaintiff made a report to Carol Faircloth and Diane Packard. Plaintiff testified that the report was made within two weeks of the accident.
12. Upon report of the accident, plaintiff was directed to U.S. Healthworks for a medical examination. Plaintiff was examined by Dr. Jessup with U.S. Healthworks on January 4, 2006. Plaintiff advised Dr. Jessup that she was injured ". . . when a patient stood up suddenly causing her to fall backwards." Dr. Jessup noted that plaintiff was limping and had a stooped posture. The exam revealed tenderness over the right groin and right greater trochanter and a decrease of range of motion in her back. Dr. Jessup recommended that an x-ray be performed of plaintiff's back and hip. Dr. Jessup prescribed naproxen and issued work restrictions of no lifting greater than fifteen pounds floor to waist and waist to shoulder, no forceful pushing, pulling and to alternate sitting and standing.
13. Plaintiff returned to U.S. Healthworks on January 9, 2006. She was examined by Mr. Whitmore, a physician's assistant. Mr. Whitmore noted minimal improvement in plaintiff's condition. Plaintiff had continued complaints of groin and anterior thigh pain. Mr. Whitmore prescribed physical therapy. Plaintiff's restrictions were maintained.
14. On January 11, 2006, plaintiff returned to Dr. Patel. He diagnosed her with low back pain/strain. Dr. Patel wrote plaintiff out of work through January 19, 2006.
15. On January 19, 2006, plaintiff returned to U.S. Healthworks with continuing complaints of pain, noting that sharp or sudden movements increased the pain. Plaintiff was again examined by Mr. Whitmore. Mr. Whitmore diagnosed plaintiff with lumbar strain and degenerative joint disease. *Page 6 
16. The defendant-employer filed a Form 19 on January 6, 2006. The form does not indicate any disability dates. Plaintiff, through counsel, filed a Form 18 on February 7, 2006. On February 9, 2006, the defendant-carrier filed a Form 61 stating, "As a result of ongoing investigation lost time is being denied. Your employer has provided work within your restrictions. We will agree to pay authorized medical bills."
17. On February 10, 2006, Dr. Jessup had the opportunity to review the MRI performed in December 2005. Dr. Jessup recommended a Medrol Dose Pak and continued plaintiff's physical therapy.
18. Dr. Patel referred plaintiff to Dr. Richard Serano, a board certified neurologist. On February 13, 2006, Dr. Serano's physician's assistant examined plaintiff. Plaintiff advised that she was experiencing back pain due to an accident that she had at work while helping a patient get off the toilet. The physician's assistant noted that plaintiff had muscle spasms and recommended nerve conduction and EMG studies be performed. Plaintiff was written out of work.
19. Plaintiff was last examined by Mr. Whitmore on February 21, 2006. The notes from that visit reflect plaintiff experienced an increase in pain. A diagnosis of radiculitis was also added due to the pressure on the nerve, which was noted on the MRI. Plaintiff's restrictions remained in place as of the February 21, 2006 visit. Dr. Jessup referred plaintiff to the Back Clinic; however, defendant-carrier denied this appointment.
20. On March 24, 2006, plaintiff underwent the nerve conduction and EMG studies recommended by Dr. Serano's physician's assistant. The tests revealed that plaintiff had a subacute right L4/5 radiculopathy. *Page 7 
21. Plaintiff returned to Dr. Serano's office on March 31, 2006. She was evaluated by the physician's assistant. The physician's assistant recommended epidural steroid injections. Plaintiff was seen by the physician's assistant again on July 21, 2006. The physician's assistant noted improvement and recommended water exercises.
22. In October 2006, plaintiff changed primary care physicians from Dr. Patel to Dr. Roshan Parikh. Once Dr. Patel knew plaintiff's injury was work-related, plaintiff was advised to follow-up with Dr. Parikh and U.S. Healthworks, and to come to his office as needed. Dr. Parikh evaluated Ms. Holmes on October 2, 2006. Dr. Parikh noted paraspinal tenderness in her lumbar spine region. At this visit, Dr. Parikh made it clear to plaintiff that he would not provide her any care for her back or pain. Dr. Parikh recommended that she continue to treat with Dr. Serano for her pain.
23. Plaintiff returned to Dr. Serano's office in November 2006. It was noted that she was continuing to make improvement. Naprosyn, an anti-inflammatory agent, was added to her medication regime.
24. In assessing the evidence as a whole, the Full Commission finds plaintiff to be credible.
25. Dr. Jessup, an expert in family and occupational medicine, opined to a reasonable degree of medical certainty that plaintiff's December 12, 2005 accident at work more likely than not caused the problems for which plaintiff sought treatment with her.
26. Dr. Serano opined to a reasonable degree of medical certainty that it is more likely than that there is a direct connection between plaintiff's accident at work and the symptomatology for which his office treated her. *Page 8 
27. Based on review of the evidence as a whole, the Full Commission finds that plaintiff suffered a specific traumatic incident on December 12, 2005 while assisting a patient in going to the bathroom.
28. Defendant-employer has a light duty program for employees injured at work. Carol Faircloth, the acting director of nursing, testified that if a staff member has light duty, they look at the amount of lifting and sitting that the staff member can do. Under the light duty program, staff members file papers, do audits on the floor, audit charts to do quality assurance, or go to medical records and help medical records audit charts.
29. Ms. Faircloth testified that she offered plaintiff light duty work during the day shift. Ms. Faircloth could not specify the lifting amounts for the light duty position offered to plaintiff. She indicated that any person could fill a light duty position, that light duty is dictated by the restrictions placed on the employee by the physician. She further indicated that there may be situations where a patient falls and needs assistance and this would be outside of plaintiff's light duty restrictions. Therefore, the light duty program is offered during the day shift because there are more people at work, and if there is an emergency somebody else could handle the emergency and it would not interfere with the injured worker's restrictions.
30. Defendant-employer's light duty program is not offered to its employees injured outside of work. Defendants denied plaintiff's workers' compensation claim; however, Ms. Faircloth did not realize plaintiff's claim was denied. Ms. Faircloth testified that since plaintiff's claim was denied, she did not know if she could offer plaintiff a light duty position.
31. The Full Commission finds that there is insufficient evidence of record from which to determine if defendant-employer could have offered light duty work to plaintiff. *Page 9 
Furthermore, there is insufficient evidence of record to determine whether the light duty job, if it was offered, was within plaintiff's restrictions.
32. Dr. Serano opined that plaintiff could do light duty work, but he did not believe it feasible that a hospital would be able to offer plaintiff light duty work, as a nurse's work is not light duty.
33. Plaintiff looked for work through the summer of 2006. Plaintiff believed that she would not be able to perform the duties as a registered nurse due to her restriction to light duty. Plaintiff made telephone calls to people that she knew and utilized the newspaper to look for work. She returned to work with a different employer on January 30, 2007.
34. Plaintiff returned to work with a different employer, a hospice, on January 30, 2007. She is responsible for three to four terminally ill patients. At the time of the hearing before the Deputy Commissioner, plaintiff was going through orientation with her new job. She did not believe that she would be responsible for any lifting, as someone has to be in the home at all times with the patients.
35. Dr. Serano opined that plaintiff will continue to need maintenance treatment for her back.
36. Based on the Form 22 provided, plaintiff worked for two months for defendant-employer before the accident. Her rate of pay averaged $27.02 per hour, equating to $216.18 per eight-hour shift. The undisputed testimony is that plaintiff worked 11 p.m. to 7 a.m. on Thursday, Friday, and Saturday nights. Accordingly, the Full Commission finds that plaintiff's average weekly wage from her position with the defendant was $648.54, yielding a compensation rate of $432.31.
 *********** *Page 10 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission is the sole judge of credibility of witnesses. Adams v. AVX Corp., 349 N.C. 676, 509 S.E.2d 411 (1998). In this case, plaintiff's testimony is taken as credible.
2. In order to establish a compensable injury to the back, plaintiff must prove that the back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese, 92 N.C. App. 222, 224,374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337,378 S.E.2d 799 (1989). Under a specific traumatic incident theory, plaintiff is not required to prove that the injury arose from an unusual occurrence or departure from ordinary duties. Fish v. Steelcase, Inc.,116 N.C. App. 703,707, 449 S.E.2d 233, 237 (1994), cert. denied, 339 N.C. 737,454 S.E.2d 650 (1995); Bradley v. E.B. Sportswear, Inc., 77 N.C. App. 450,335 S.E.2d 52 (1985).
3. On December 12, 2005, plaintiff suffered a specific traumatic incident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
4. Pursuant to N.C. Gen. Stat. § 97-32, if an employee refuses suitable employment without justification, the employee is not entitled to any compensation during the continuance of such refusal. N.C. Gen. Stat. § 97-32, Franklin v. Broyhill Furn. Ind., 123 N.C. App. 200,472 S.E.2d 382 (1996). In the present case, there is insufficient evidence to determine if plaintiff could have been offered light duty work by defendant-employer. Additionally, there is *Page 11 
insufficient evidence to determine whether the light duty job, if it was offered, was within plaintiff's restrictions.
5. As a result of the specific traumatic incident, plaintiff is entitled to temporary total disability compensation at the rate of $432.31 per week, beginning December 15, 2005 and continuing through January 29, 2007. N.C. Gen. Stat. § 97-29.
6. As a result of the specific traumatic incident, plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred in the future for so long as such treatment may reasonably be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $432.31, beginning December 15, 2005 through January 29, 2007, for the temporary total disability sustained as a result of this specific traumatic incident. The compensation that has accrued shall be paid in a lump sum, subject to the attorney's fee approved.
2. Defendants shall pay all medical expenses incurred or to be incurred, as a result of plaintiff's compensable specific traumatic on December 12, 2005, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. *Page 12 
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded under Paragraph 1 of this Award is hereby approved for plaintiff's counsel.
4. Defendants shall pay the costs.
This the 28th day of April, 2008.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1