***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. The appealing party has not shown good grounds to receive further evidence or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms the Opinion and Award of the Deputy Commissioner with modifications and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. At all times relevant hereto, the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act, the Defendant-Employer regularly employing three or more employees.
2. At all times relevant hereto, there was an Employee-Employer relationship between the Plaintiff-Employee and Defendant-Employer.
3. At all times relevant hereto, Specialty Risk Services has been the administrator for Defendant-Employer, Miller Long Co., Inc.
4. Defendant-Employer accepts the compensability of Plaintiff's February 22, 2010, neck injury, as a medical-only claim and denies that indemnity compensation is owed.
5. At the hearing the parties submitted into evidence, "A Notebook of Various Stipulated Exhibits," which were admitted into the record and marked as Stipulated Exhibit (1) and which included the following:
 (a) A Pre-Trial Agreement;
 (b) Medical Records;
 (c) Industrial Commission Forms and;
 (d) Stipulated Miscellaneous Stipulated Exhibits.
 *********** EXHIBITS
1. The Deputy Commissioner admitted into evidence the following exhibit submitted by Plaintiff over Defendant-Employer' Objection: A Functional Capacity Evaluation Report, marked as Plaintiff's Exhibit (1). *Page 3 
2. The Deputy Commissioner admitted into evidence the following exhibits submitted by Defendant-Employer over Plaintiff's objections:
 (a) A Surveillance-Investigation Report, marked as Defendant-Employer's Exhibit (1);
 (b) A Surveillance-Investigation DVD, marked as Defendant-Employer's Exhibit (2);
 (c) Records from Plaintiff's Post-Hearing Medical Evaluations, marked as Defendant-Employer's Exhibit (3).
 *********** ISSUES
1. Is Plaintiff entitled to indemnity compensation as of April 15, 2010?
2. Whether the Safety Flagger position offered to Plaintiff was suitable employment; and, whether by refusing to return to work for Defendant-Employer in that position Plaintiff unjustifiably refused suitable employment?
 ***********
Based upon a preponderance of the evidence in view of the entire record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was a thirty-eight (38) year old native from San Salvador who was legally authorized to work in the United States. Plaintiff's work history in the United States consisted mostly of construction work for eighteen (18) years. Plaintiff had been employed with Defendant-Employer in the construction industry since 2008. On February 22, 2010, his job title was site safety manager. *Page 4 
2. Plaintiff testified at the hearing through an interpreter, but had the ability to communicate verbally at work in English.
3. On February 22, 2010, Plaintiff sustained an injury by accident when he was assembling a scaffold and one of the pieces dropped and jerked his arm, resulting in a neck injury.
4. Defendant-Employer initially filed an Industrial Commission Form 63 accepting Plaintiff's neck injury as a medical only claim.
5. On February 23, 2010, Plaintiff presented to Chapel Hill Urgent Care for neck pain and was diagnosed with a neck muscle strain. Plaintiff was released to return to sedentary work with a restriction of no lifting more than ten (10) pounds.
6. Plaintiff returned to work for Defendant-Employer. Plaintiff testified that upon returning to light-duty work he was instructed to perform work outside of his restrictions. Plaintiff testified that he was instructed to build a four (4) foot by twelve (12) foot scaffold, and to lift plywood, which exceeded his lifting restrictions. Plaintiff further testified that he experienced increased pain from having to work outside of his restrictions and that he reported the pain to his supervisors. Plaintiff contends that because he was assigned certain light duty tasks, he was treated disrespectfully by his co-workers.
7. Mr. Frank Trujillo, Defendant-Employer's Regional Safety Director, and Mr. Richard Pellath, Defendant-Employer's Site Safety Manager, testified that upon returning to work, Plaintiff assisted carpenters by passing along short two (2) by fours (4) weighing approximately three (3) to four (4) pounds, sweeping with a broom, and performing safety monitoring. *Page 5 
8. Mr. Pellath and Mr. Trujillo testified that Plaintiff did not report to them any concerns about having to work outside of his restrictions, or his supervisors failing to adhere to or respect his light-duty work restrictions, or that he was having problems performing his light-duty work assignments.
9. Mr. Trujillo testified that Plaintiff had reported to him that he desired to do more work than he was permitted to do under his light-duty restrictions and that he was fine during the day while working and moving, but experienced increased pain at night when attempting to sleep.
10. Plaintiff returned to Chapel Hill Urgent Care on March 5, 2010 and was diagnosed with a neck and left trapezius strain. Plaintiff was released to full duty work with no restrictions.
11. Plaintiff's full duty release continued until March 30, 2010, at which time Plaintiff was assigned new work restrictions of no lifting more than twenty (20) pounds. He was referred to an orthopedist for further evaluation.
12. Following Plaintiff's continued complaints of neck pain, an MRI was ordered, which revealed degenerative changes at C5-C6, and no stenosis or nerve root impingement.
13. On April 13, 2010, Plaintiff sought treatment from Dr. Sameer Mathur at Cary Orthopaedic. A physical examination of Plaintiff's neck revealed pain to palpation of the left paraspinal muscles from C5 through C7 and left trapezial pain. Dr. Mathur diagnosed Plaintiff as having axial neck pain, with no radiculopathy, that appeared to be myofascial in nature. Dr. Mathur prescribed aggressive physical therapy, refilled Plaintiff's medications and referred him to Dr. Scott Sanitate for trigger point injections. *Page 6 
14. Additionally, Dr. Mathur noted that Plaintiff could continue working light-duty with restrictions of no lifting more than twenty (20) pounds, and the avoidance of overhead activity, bending, stooping and crawling.
15. Plaintiff continued working in his light duty position with Defendant-Employer until April 15, 2010. As of April 15, 2010, Plaintiff contended that he was unable to continue working due to increased pain caused by performing work outside of his restrictions.
16. Plaintiff presented to Dr. Scott Sanitate on April 28, 2010. Plaintiff reported that he had not worked during the prior two (2) weeks due to increased pain. Plaintiff also reported to Dr. Sanitate that Defendant-Employer was not abiding by the work restrictions assigned to him. Dr. Sanitate diagnosed Plaintiff as having a cervical strain with underlying trapezial myofascial discomfort and modified Plaintiff's previously assigned work restrictions to no lifting more than forty (40) pounds and to avoid prolonged cervical extension.
17. Plaintiff presented Dr. Sanitate with an Industrial Commission Form 28U seeking verification of a failed trial return to work. Dr. Sanitate did not sign the Form 28U, and, instead encouraged Plaintiff to present the restrictions he had assigned to Defendant-Employer.
18. On May 26, 2010, Defendant-Employer provided Dr. Sanitate with a job description for a Safety Flagger position. Dr. Sanitate reviewed and approved the Safety Flagger position for Plaintiff.
19. Plaintiff provided Dr. Sanitate with documentation which he felt showed that Defendant-Employer had not adhered to his work restrictions and renewed his request for Dr. Sanitate to sign a Form 28U. Dr. Sanitate again declined to sign the Form 28U.
20. On June 9, 2010, Defendant-Employer sent Plaintiff correspondence, noting their willingness to offer Plaintiff a return to work opportunity in the Safety Flagger position approved *Page 7 
by Dr. Sanitate. In their correspondence, Defendant-Employer noted that Plaintiff should report to the NRC-Green Square Complex project in Raleigh no later than 7:00 a.m. on June 14, 2010. It was also noted that Plaintiff's hours would be from 7:00 a.m. to 3:30 p.m., and that there would be no diminution in wages.
21. The Safety Flagger position offered to Plaintiff required some light duty lifting of a safety flag and safety paddle, each weighing up to approximately five (5) pounds. The shift hours for the Safety Flagger position were similar to Plaintiff's pre-injury shift hours and the pay range for the position was between $13.00 and $17.50 an hour, with room for advancement and pay increases during bi-annual reviews.
22. The Safety Flagger position is a real, permanent, light-duty position. Defendant-Employer hires Safety Flaggers and advertises the position to the general public when there is an available position. Additionally, the position is listed with the Employment Security Commission and is part of Defendant-Employer's budget.
23. On June 10, 2010, Plaintiff returned to Dr. Sanitate who provided a second trigger point injection, as well as medication patches. Dr. Sanitate continued Plaintiff's previously assigned work restrictions, and encouraged him to return to work.
24. Plaintiff did not report to work on June 14, 2010 for the approved Safety Flagger position.
25. Plaintiff has not returned to work since April 15, 2010 and there is insufficient evidence to prove that he has made reasonable efforts to seek other employment since April 15, 2010, or that it would have been futile for him to do so.
26. Plaintiff returned to Dr. Sanitate on September 9, 2010 and reported localized pain along the cervical thoracic spinous process and at the trapezial distribution bilaterally. For *Page 8 
these symptoms, Dr. Sanitate proposed that Plaintiff be evaluated for a cervical facet injection with Dr. Gary L. Smoot. Dr. Sanitate advised Plaintiff to avoid cervical extension, and again encouraged him to return to work under his prior work restrictions.
27. On October 6, 2010, Plaintiff underwent a functional capacity evaluation, ("FCE"), the results of which indicated that he was capable of sedentary work with lifting no more than ten (10) pounds and no ladder work. The Safety Flagger position was within these restrictions.
28. On October 21, 2010, Plaintiff presented to Dr. Gary L. Smoot and was diagnosed with chronic cervical pain, potentially facet in origin. For treatment, Dr. Smoot recommended facet injection therapy, which Plaintiff received on October 29, 2010.
29. Plaintiff continued treating with Dr. Sanitate into 2011. On March 3, 2011, Plaintiff reported experiencing an improved cervical range of motion, and decreased, occasional pain with cervical extension. Dr. Sanitate continued the restrictions he previously assigned to Plaintiff.
30. On March 17, 2011, Dr. Sanitate noted that, given the period of time since Plaintiff's injury by accident, if no additional treatment resolved Plaintiff's symptoms, he would address whether Plaintiff had reached maximum medical improvement.
31. Dr. Sanitate did not address whether Plaintiff had reached maximum medical improvement after March 17, 2011. The Full Commission finds that Plaintiff has not reached maximum medical improvement and that he needs continuing medical treatment for his compensable injury.
32. The Full Commission gives greater weight and credibility to the testimony of Mr. Trujillo and Mr. Pellath and finds as fact that upon Plaintiff's return to work after his February 22, 2010 *Page 9 
compensable injury, Defendant-Employer accommodated his light duty work restrictions and that Plaintiff performed the light duty work assigned to him without any reported problems or complaints to Defendant-Employer.
33. The Full Commission finds that the light duty work that Plaintiff performed between February 23, 2010 and April 14, 2010, was real work and was suitable to his work capacity based upon the restrictions assigned by his treating physicians.
34. The Full Commission further finds that the Safety Flagger position offered to Plaintiff by Defendant-Employer was suitable employment for Plaintiff as it was real work that was approved by his treating physician, was similar to his pre-injury hours and wages, was within the restrictions assigned by Dr. Mathur and Dr. Sanitate and within the physical limitations identified by the functional capacity evaluation. Plaintiff's refusal to work in the Safety Flagger position constituted an unjustifiable refusal to accept suitable employment.
35. Defendant-Employer has presented evidence through surveillance tapes indicating that Plaintiff is capable of lifting within his assigned restrictions and that his physical limitations are not as debilitating as Plaintiff contends. Based upon a preponderance of the evidence, the Full Commission finds that Plaintiff was capable of performing the duties assigned to him by Defendant-Employer after his February 22, 2010 injury and was capable of performing these duties as of April 15, 2010. Plaintiff was also capable of performing the duties of the offered Safety Flagger position.
36. The Full Commission further finds that Plaintiff has failed to show that as of April 15, 2010, he has been incapable of working in any capacity.
 *********** *Page 10 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 22, 2010, Plaintiff sustained a compensable injury to his neck, arising out of and in the course of his employment with Defendant-Employer. Although Defendant-Employer denied compensability, they have not assigned error to the Deputy Commissioner's finding of a compensable injury by accident. N.C. Gen. Stat. § 97-2(6).
2. If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation during the continuance of such refusal, unless, in the opinion of the Industrial Commission, such refusal was justified. N.C. Gen. Stat. § 97-32.
3. The burden is on the employer to show, as a basis for suspension or termination of workers' compensation disability benefits, that an employee refused suitable employment. N.C. Gen. Stat. § 97-32. To establish that an employee has unjustifiably refused employment, the employer has to show that: (1) employment procured for the employee is suitable to the employee's capacity and (2) the employee has unjustifiably refused procured employment. Franklin v. Broyhill Furn.Indus., 123 N.C. App. 200, 472 S.E.2d 382 (1996).
4. Plaintiff has failed to show that he was instructed or forced by Defendant-Employer to work outside of his light-duty work restrictions. The Full Commission concludes that the light-duty job Plaintiff performed for Defendant-Employer between February 23, 2010 and April 14, 2010 was suitable to his capacity. Plaintiff refused employment procured for him suitable to his capacity when he refused to return to work after April 15, 2010 and is therefore, not entitled to any compensation at any time during his continuance of such refusal. Id. *Page 11 
5. The Safety Flagger position was real work that was approved by Plaintiff's treating physician, was similar to his pre-injury hours and wages, was within the restrictions assigned by Dr. Mathur and Dr. Sanitate and within the physical limitations identified on the functional capacity evaluation. The Full Commission further concludes that the Safety Flagger position offered to Plaintiff was suitable employment and that Plaintiff has failed to show that his refusal to report to work for the Safety Flagger position was justifiable. Plaintiff's refusal to report to work for the Safety Flagger position constituted an unjustifiable refusal to accept suitable employment which would have resulted in a suspension of compensation during the continuance of such refusal, had he been receiving compensation. N.C. Gen. Stat. § 97-32.
6. The Plaintiff bears the burden of proving that he is unable to earn the same wages in the same job or other employment. Russell v. Lowe'sProd. Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993). UnderRussell, a claimant can prove disability in one of four ways: (1) by production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work or any employment; (2) by production of evidence that he is capable of some work, but has after reasonable effort been unsuccessful in his efforts to obtain employment; (3) by production of evidence that he is capable of some work, but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employments; or (4) by production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.Id.
7. The evidence establishes that Plaintiff is capable of some work but has not made a reasonable effort to seek other employment after his refusal of suitable employment. Plaintiff has also failed to show that it would be futile for him to seek other employment. Id. *Page 12 
8. Plaintiff has not shown that he was disabled from work as a result of his compensable injury from April 15, 2010, or at any time thereafter. N.C. Gen. Stat. § 97-29; Id.
9. Since Plaintiff has not reached maximum medical improvement and still has some restrictions related to his injury, he can still make a subsequent showing of disability through proof under any of theRussell factors for any period after the Deputy Commissioner's Opinion and Award. Russell v. Lowe's Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
10. As a result of his injury, Plaintiff is entitled to have Defendants pay all related medical expenses incurred, or to be incurred according to Commission procedures. N.C. Gen. Stat. § 97-2(19).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Under the law, Plaintiff's claim for indemnity compensation must be and is HEREBY DENIED. Defendants shall pay for medical expenses incurred or to be incurred for Plaintiff's injury.
2. This decision does not prevent Plaintiff from making a subsequent showing of disability.
3. Defendants shall pay the costs.
This the ___ day of November 2011. *Page 13 
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/______________ LINDA CHEATHAM COMMISSIONER
 S/_____________ TAMMY R. NANCE COMMISSIONER